615 F.2d 163
 22 Fair Empl.Prac.Cas. 768,
22 Empl. Prac. Dec. P 30,802
Mauro RAMIREZ, Individually and on behalf of all others
similarly situated, Plaintiff-Appellant,
v.
Jesse SLOSS, Individually and in his official capacity as
City Manager of the City of Brownsville, Texas, et
al., Defendants-Appellees.
 No. 77-2628.
 United States Court of Appeals,
Fifth Circuit.
 April 7, 1980.
 
 James A. Herrmann, Harlingen, Tex., for plaintiff-appellant.
 Charles Willette, Jr., Brownsville, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before SIMPSON, CHARLES CLARK and FRANK M. JOHNSON, Jr., Circuit Judges.
 SIMPSON, Circuit Judge:
 
 
 1
 Appellant Mauro Ramirez, a lawfully admitted resident alien, sought and was denied employment as a laborer with the city of Brownsville, Texas. He brought suit in the district court, individually and as a class representative, against appellee-city officials in their individual and official capacities claiming violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1870, 42 U.S.C. § 1983, and the Ku Klux Klan Act, 42 U.S.C. § 1985(3). The central trial controversy concerned a provision of the city's personnel manual expressing an employment preference for United States citizens. Ramirez asserted that the provision was illegally applied to him and his class. Appellees acknowledged the facial illegality of the citizen preference policy but claimed the provision was not followed. The district judge found: that Ramirez failed to establish a prima facie case of employment discrimination by statistical evidence; that even if he had established a prima facie case under the four prong test established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), appellees rebutted that showing by proving a justifiable nondiscriminatory reason for rejecting Ramirez; and that it was not necessary to consider damages due the class because Ramirez failed to establish liability for the wrong charged. However, the court declared the citizen preference provision unconstitutional and ordered the appellees to "immediately implement a revised personnel manual and eliminate any unlawful preference in hiring granted to United States Citizens." App. at 35. Ramirez's motion for award of attorney fees was denied.
 
 
 2
 We conclude: that the trial court's factual finding that the citizen preference policy was not applied to Ramirez and other factual findings are clearly erroneous; that a prima facie case of employment discrimination under 42 U.S.C. §§ 1981 and 1983 was shown; that appellees failed to rebut that prima facie case; that the lower court's findings as to the class are incomplete; and that appellant is entitled to reasonable costs and attorney fees. Accordingly we reverse and remand for further proceedings.
 
 FACTS
 
 3
 The central factual dispute below was whether the following provision of the city's personnel manual was applied to Ramirez or his class:
 
 
 4
 That in addition to any and all other qualifications required, all employees of the City of Brownsville shall be citizens of the United States of America and during the course of their employment shall remain residents of the City of Brownsville.
 
 
 5
 The residential requirements above shall not apply in the case of skilled or technical personnel, now in the employment of the City or to be appointed where in the judgment of the City Manager personnel possessing the necessary qualifications including the qualification specified above, are not available and such personnel may continue in the employment of the City until they can be replaced by a resident or residents of the City so that there shall be no work stoppage until replacements having the necessary qualifications, including that set forth above may be found.
 
 
 6
 App. at 277.
 
 
 7
 As in most employment discrimination cases, the facts are crucial to decision of the case. Rule 52(a) of the Federal Rules of Civil Procedure requires appellate courts to accept a district court findings of fact unless clearly erroneous. A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948). See also East v. Romine, Inc., 518 F.2d 332, 338 (5th Cir. 1975). With these principles in mind we consider each factual error as it falls in the following sequence of events leading to the instant litigation.
 
 
 8
 Appellant is a citizen of Mexico who has legally resided in the United States since 1955 when he came here as a twelve year old child. In early 1975 he traveled to Brownsville, Texas in search of employment. Eventually his quest led to the desk of Mr. Juan Hinojosa, the personnel technician for the city of Brownsville. Mr. Hinojosa was primarily responsible for interviewing prospective hirees. The district court made the following findings of fact concerning this first visit:
 
 
 9
 Hinojosa asked Ramirez if he was a United States citizen and Ramirez replied that he was not. Ramirez immediately became irate and boisterous when identification was requested. It is not clear just exactly what was said between Plaintiff Ramirez and Hinojosa, but the Court is satisfied that Ramirez refused to furnish the City with any satisfactory identification as to his resident status. Ramirez asked for Hinojosa's name, stating he intended to file a discrimination suit. The attitude of Plaintiff indicated to this Court that he was more interested in taking issue with the City than in obtaining work.
 
 
 10
 App. at 27-28. These findings are not complete or accurate even when judged by the clearly erroneous standard.
 
 
 11
 Hinojosa's testimony established that he instructed Ramirez "it was city policy to hire U.S. citizens." Record, vol. 1 at 297. During a subsequent visit to the city's personnel office Ramirez completed a job application form. Hinojosa completed an applicant evaluation form based on the written application and Ramirez's first visit; he noted thereon: "not a U.S. citizen-city policy explained to him about requirement of U.S. citizenship arrogant and pushy made threats of law suit if not hired." App. at 278. After talking with Hinojosa, Ramirez filed a complaint with the Texas Employment Commission. The Commission official who investigated the complaint testified that Hinojosa told him "it is the policy of the city of Brownsville to hire only American citizens. . . ." Record, vol. 1 at 95. Ramirez testified to the same effect.
 
 
 12
 The completed puzzle made by the evidential pieces reveals that Ramirez went to the personnel office on April 11, 1975 to seek employment as a laborer. Hinojosa asked to see identification. Ramirez asked why. Hinojosa explained that it was city policy to hire only U.S. citizens. Ramirez became "arrogant and pushy" after he was told of the citizen preference policy. Hinojosa did testify that he does not discriminate against resident aliens in hiring. However, the evidence, including his own testimony, belies his words. In this case he at least told Ramirez and others that the city had a citizenship requirement.
 
 
 13
 The initial visit, which lasted only two minutes, broke down after Hinojosa informed Ramirez of the citizen preference policy. We accept the trial court's finding that appellant left without showing identification. Hinojosa testified he asked for identification to determine whether Ramirez was an illegal alien and to determine whether he was a resident of the city of Brownsville. These purported reasons were never explained to appellant.
 
 
 14
 On April 14, 1975 Ramirez returned to the city's personnel office. The district court found:
 
 
 15
 Plaintiff entered the office carrying a baseball bat, wearing a shirt completely opened, sandals, and an oversized hat. When he spoke to Arthur Garza he was arrogant, loud, and generally unpleasant. However, Garza directed Plaintiff to fill out a "Request for Notification of Job Opportunity" card. On this form, Plaintiff indicated a desire to work as a laborer or in other outside work. It is easy to understand why Garza would raise the City's policy of hiring only United States citizens, even though the rule had not been adhered to in the past.
 
 
 16
 App. at 29. A secretary testified that Ramirez appeared in the attire described, but there is no evidence in the record that he was "arrogant, loud, and generally unpleasant." The district judge's opinion does not reveal his evidential foundation for this conclusion. Garza did not testify, but his deposition is stapled to some of the pleadings. The deposition was not admitted into evidence. A deposition that has not been admitted into evidence cannot support a finding of fact.[1]
 
 
 17
 On May 6, 1975 appellant visited the personnel office for a third time. He spoke to Arnulfo Martinez, the director of the office and Hinojosa's immediate supervisor. At Ramirez's insistence, Martinez allowed him to fill out a job application form.[2]
 
 
 18
 The lower court also held that Ramirez "never showed the city personnel any verification that he was a legal alien. He consistently refused to provide this verification even though requested." App. at 29. There is no evidence to support the conclusion. Hinojosa testified that Ramirez displayed verification of his resident alien status to Arthur Garza during the second visit. There was no contrary evidence.
 
 THE INDIVIDUAL PRIMA FACIE CASE
 
 19
 The district court's conclusions of law are of course unfettered by the clearly erroneous rule. He held that a plaintiff "must" meet the four criteria set forth in McDonnell Douglas, supra, to establish a prima facie case of employment discrimination under the Civil Rights Act of 1964.[3] This suit was brought under the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1981 & 1983,[4] not the 1964 act.[5] We are not aware of and counsel have not cited any case in this circuit specifically holding that the McDonnell Douglas test is applicable to an employment discrimination case brought under section 1981 or 1983.[6] Although the McDonnell Douglas prima facie case formula presents a logical and appealing application in 1981 and 1983 discrimination cases, we need not discuss either its general appropriateness or its specific application in the instant case.[7] A more fundamental error was committed.
 
 
 20
 Until recently, and certainly at the time of enactment of sections 1981 and 1981, discrimination was relatively open and easy to recognize. As passage and enforcement of the civil rights laws progressed, the sophistication of discrimination increased. Today it is rare to find an employer who defies the constitution and civil rights laws by openly refusing to hire members of a protected class. Under Title VII a plaintiff may create a rebuttable inference of intentional employment discrimination by proving the four elements of the McDonnell Douglas test. International Brotherhood of Teamsters v. United States, 431 U.S. 324, 357 n.44, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396, 429 (1977). However, courts must not allow the mechanical formula to blind them to the real issue of whether the defendant illegally discriminated against the plaintiff. McDonnell Douglas is only one way to establish a prima facie case of employment discrimination. International Brotherhood of Teamsters, supra, 431 U.S. at 358, 97 S.Ct. at 1866, 52 L.Ed.2d at 429.[8] In the rare situation in which the evidence establishes that an employer openly discriminates against an individual it is not necessary to apply the mechanical formula of McDonnell Douglas to establish an inference of intentional discrimination; the showing has already been made directly.[9] In rejecting mechanistic application of the McDonnell Douglas test, the Supreme Court has clarified a plaintiff's prima facie case burden under Title VII:
 
 
 21
 But McDonnell Douglas did make clear that a Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were "based on a discriminatory criterion illegal under the Act." International Brotherhood of Teamsters v. United States, supra, 431 U.S., at 358, 97 S.Ct., at 1866.
 
 
 22
 Furnco Construction Corp. v. Waters, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 966-67 (1979). These same principles are applicable in employment discrimination cases under 42 U.S.C. §§ 1981 and 1983. Appellant established that the city had a written personnel policy favoring United States citizens and that city officials told him and others that the city had a citizen preference policy. Proof of these evidential facts established a prima facie case. We think it abundantly clear that under this proof it was more likely than not that the rejection of Ramirez was "based on a discriminatory criterion." Id. It was not necessary or proper to require proof of the McDonnell Douglas criteria.[10]
 
 REBUTTAL OF THE INDIVIDUAL PRIMA FACIE CASE
 
 23
 Once Ramirez established his individual prima facie case the burden shifted to appellees to rebut by proving a valid nondiscriminatory reason for his rejection. Burdine v. Texas Dept. of Community Affairs, 608 F.2d 563, 566 (5th Cir. 1979); Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1255 (5th Cir. 1977). A district court finding that a prima facie case of employment discrimination has or has not been rebutted is a finding of ultimate fact that is freely reviewable on appeal. East v. Romine, Inc., supra, 518 F.2d at 338-39. The district judge held that Ramirez was lawfully rejected because of his "unbusinesslike approach to the position, his antagonistic attitude and his threats. . . ." App. at 33. The only threats he made were threats to sue if the city applied the unconstitutional citizen preference policy to him. His attitude became unbusinesslike and boisterous after the city's personnel technician told him that the city had a policy of requiring United States citizenship. There is no evidence in the record that the appellees ever changed, clarified or explained this statement. Ramirez was told of the citizen preference policy after he produced evidence of his resident alien status. Under the facts of the case, the proffered reason for rejecting Ramirez as an employee is insufficient as a matter of law to rebut a prima facie case of employment discrimination. See East v. Romine, supra, 518 F.2d at 340.
 
 
 24
 A municipal employer with a written unconstitutional policy excluding a protected class faces an uphill battle in proving that the policy is not applied especially where, as here, the city officials tell the plaintiff that the policy is applicable to him.[11] They should expect that a person who is told he cannot be hired because he is a member of some protected class is likely to react in a boisterous, indignant and even unbusinesslike manner. If the city is to correct the misunderstanding, if indeed there is a misunderstanding, then it must take definite, affirmative steps to do so. It would frustrate the purpose of antidiscrimination laws to allow the employer to use an applicant's boisterous conduct as a shield from the law when the employer triggered the conduct by verbalization of an unconstitutional policy.[12]
 
 THE CLASS PRIMA FACIE CASE
 
 25
 The district judge apparently found, and we agree, that the statistics presented by Ramirez were too incomplete to establish a prima facie case of class wide discrimination. But, if a city has a facially unconstitutional written hiring policy and has applied that policy on at least one occasion, a court could conclude that a prima facie case of class discrimination is shown without resort to statistics. It is not clear what the court found with regard to the class prima facie case burden. He held:
 
 
 26
 The class which Plaintiff represented is eligible for relief only if Plaintiff can demonstrate liability of the Defendant for the wrong that is charged. Plaintiff has failed to demonstrate liability; therefore no consideration of damages due the class is necessary.
 
 
 27
 App. at 33. However he declared the written policy unconstitutional and ordered the appellees to "immediately implement a revised personnel manual and eliminate any unlawful preference in hiring granted to United States citizens." App. at 34-35. Therefore, at least a portion of the class relief sought was granted, perhaps all that is warranted. Additionally, the district court opinion can be interpreted to hold (incorrectly) that the class action failed because the individual cause of action was not established. Bolton v. Murray Envelope Corp., 553 F.2d 881, 883-84 (5th Cir. 1977) reh. denied en banc 557 F.2d 823, teaches that the demise of the individual cause of action does not trigger the demise of the class action. On remand the district court should clarify these ambiguities and determine what, if any, additional relief is due the class.
 
 ATTORNEY FEES
 
 28
 Plaintiff has substantially prevailed in this suit and as the prevailing party he is entitled to reasonable costs, Fed.R.Civ.P. 54(d), and attorney fees, 42 U.S.C. § 1988, including the costs and fees involved on appeal and remand unless special circumstances exist which would render an award unjust. E. g. Iranian Student's Ass'n v. Edwards, 604 F.2d 352 (5th Cir. 1979); Criterion Club of Albany v. Board of Commissioners, 594 F.2d 118, 120 (5th Cir. 1979). No special circumstances are present.
 
 CONCLUSION
 
 29
 We find substantial error in the factual finding and the legal conclusions of the district judge. Accordingly we remand for a determination of the appropriate type and amount of relief due Ramirez, to include award of reasonable costs and attorney fees. The district court is directed to clarify its findings concerning the class and award appropriate additional class relief if warranted.
 
 
 30
 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
 
 
 
 [1]
 Counsel for appellant has repeatedly cited to us other depositions not in evidence. We cannot consider references in brief to matters not made a part of the record
 
 
 [2]
 Ramirez may have been rude and aggressive at this third visit as the testimony of Martinez indicates:
 A Well, if I recall correctly, he he was very rude, and he insisted on filling out an application card and at one point in time I kind of felt that he might be attacking me physically.
 Q Did he ever touch you?
 A No, sir.
 Record, vol. 1 at 258.
 
 
 [3]
 The four criteria are: (1) that the plaintiff is a member of a protected minority; (2) that he applied and was qualified for a job for which the employer sought applicants; (3) that he was rejected; and (4) that the employer continued to seek applicants from persons with plaintiff's qualifications after plaintiff was rejected. McDonnell Douglas, supra, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677
 
 
 [4]
 The claim under 42 U.S.C. § 1985(3) alleges a conspiracy to violate sections 1981 and 1983; therefore our discussion is confined to the latter sections
 
 
 [5]
 The 1964 act does not apply to employment discrimination on the basis of alienage. 42 U.S.C. § 2000e-2(a); Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). The 1866 and 1870 acts, 42 U.S.C. §§ 1981 & 1983, do apply to employment discrimination based on alienage. E. g. Sugarman v. Dougall, 413 U.S. 634, 93 S.Ct. 2842, 37 L.Ed.2d 853 (1973) (Employment discrimination based on alienage is generally prohibited by the 14th Amendment. Section 1983 is the statutory vehicle for remedy of 14th Amendment violations.); Garner v. Giarrusso, 571 F.2d 1330 (5th Cir. 1978), reh. denied en banc 575 F.2d 300, Guerra v. Manchester Terminal Corp., 498 F.2d 641, 653 (5th Cir. 1974), reh. denied en banc 503 F.2d 567. Appellees have not contested the applicability of sections 1981 and 1983 to this type fact situation
 
 
 [6]
 At least one case in another circuit has applied the test under section 1981. See Sabol v. Snyder, 524 F.2d 1009 (10th Cir. 1975). Several cases in this circuit brought under the 1964 act and section 1981 have applied the McDonnell Douglas test without any discussion of the applicability of the test under section 1981. E. g. Davis v. Jackson County Port Authority, 611 F.2d 577 (5th Cir. 1980); Turner v. Texas Instruments, Inc., 555 F.2d 1251 (5th Cir. 1977). As to the applicability of the McDonnell Douglas test under section 1983, see 2 A. Larson, Employment Discrimination, § 52.80 at 10-218 (1979), wherein the author argues that although no case has specifically adopted the test in a 1983 employment discrimination case, there is substantial justification for doing so
 
 
 [7]
 The test is likely appropriate to establish that an employer has treated the plaintiff differently because of race, alienage or other forbidden criteria, but a prima facie case under section 1981 or 1983 may require additional elements of proof. Recent Supreme Court cases require courts to exercise caution when transplanting Title VII law to other areas of employment discrimination law. See Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450, 464 (1977); Washington v. Davis, 426 U.S. 229, 247-48, 96 S.Ct. 2040, 2051, 48 L.Ed.2d 597 (1976). See also Chicano Police Officer's Ass'n v. Stover, 552 F.2d 918 (10th Cir. 1977). For an in-depth discussion of the impact of these cases in this area of the law see Heisner, Intent and Impact: The Standard of Proof Necessary to Establish a Prima Facie Case of Race Discrimination Under 42 U.S.C. § 1981, 16 San Diego L.Rev. 207 (1979)
 
 
 [8]
 The district judge held a plaintiff may also establish a prima facie case by showing a statistical disparate impact on the protected group. Under Title VII proof of employment discrimination by a showing of disparate impact does not require proof of discriminatory purpose. Washington v. Davis, supra, 426 U.S. at 246-47, 96 S.Ct. at 2051, 48 L.Ed.2d at 611-12. A showing of discriminatory purpose is required to establish a prima facie of discrimination under 42 U.S.C. § 1983. See Arlington Heights, supra. In this circuit proof of discriminatory purpose is also required to establish a prima facie case under § 1981. Williams v. Dekalb County, 582 F.2d 2 (5th Cir. 1978). Accord, City of Milwaukee v. Saxbe, 546 F.2d 693, 705 (7th Cir. 1976). Contra, Davis v. County of Los Angeles, 566 F.2d 1334, 1340 (9th Cir. 1977) vacated on other grounds, 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); Kinsey v. First Regional Securities, Inc., 181 U.S.App.D.C. 207, 215 n.22, 557 F.2d 830, 838 n.22 (D.C.Cir.1977)
 
 
 [9]
 This court has possibly encouraged mechanical application of McDonnell Douglas in one opinion. Marks v. Prattco, Inc., 607 F.2d 1153 (1979), held that to prove a prima facie case of discriminatory discharge under Title VII the plaintiffs "were required to show: (1) they are members of a protected minority; (2) they were qualified for the jobs from which they were discharged; (3) they were discharged; and (4) after they were discharged their employer filled the positions with nonminorities." Id. at 1155 (emphasis added). The emphasized portion of the above quote is not to be construed to mean that those criteria are the only way to establish a prima facie case
 
 
 [10]
 The district judge apparently assumed, without so holding, that a prima facie case was shown under the McDonnell Douglas test. The court held that there was little evidence that the fourth prong (that the employer continued to seek applicants with plaintiff's qualifications) was established. Appellees argued, without providing supporting evidence, that Ramirez was placed on a waiting list and that he was "99th" in line. Eight laborers were hired after he applied; all were U.S. citizens. Appellee also alleged, again without providing supporting evidence, that these eight laborers came from the waiting list. These difficulties underscore the unnecessary burden imposed on a plaintiff by sticking him with the four prongs of McDonnell Douglas when he has already shown intentional discrimination by direct evidence
 Prongs two and four of the McDonnell Douglas test, that plaintiff was qualified and that the employer continued to seek applicants from persons with plaintiff's qualifications, are two of the most common nondiscriminatory reasons for rejecting a job applicant. McDonnell Douglas permits an inference of unlawful discrimination under Title VII when a rejected minority member negates these two nondiscriminatory reasons for rejection. In the present fact situation Ramirez established his prima facie case by showing acts of open, intentional discrimination. Proof that there were no jobs available became a part of the appellee's rebuttal burden. See note 12, infra. Ramirez did not have to negate the possibility of a valid nondiscriminatory reason until the appellees met this burden.
 
 
 [11]
 Employers may find relief from this heavy burden by eliminating such "dead letter policies." The offensive provision in the instant case was in the city's personnel manual for more than five years
 
 
 [12]
 There was evidence that the city was not hiring at the time Ramirez was rejected. This evidence sufficed to meet appellee's rebuttal burden of proving a valid nondiscriminatory reason for the refusal to hire. See Burdine v. Texas, supra, Turner v. Texas Instruments, Inc., supra. However, Ramirez demonstrated that this reason was a pretext by proving that eight laborers were hired after he applied. See e. g., Furnco, supra, 438 U.S. at 578, 98 S.Ct. at 2950; Burdine v. Texas, supra, 608 F.2d at 567-68 n.8
 Appellees also attempted to rebut Ramirez's prima facie case by alleging that he was placed on a waiting list and that the eight laborers subsequently hired were ahead of him on the list. However, appellees failed to introduce any evidence to support this allegation. More than a bald allegation of a valid nondiscriminatory reason is required to rebut a prima facie case of employment discrimination. Burdine v. Texas, supra, 608 F.2d at 568.