**Leroy E. KENDALL, Jr.,
Plaintiff-Appellant,**

v.

**John R. BLOCK, in His Official Capacity as Secretary of the United States Department of Agriculture, Defendant-Appellee.**

**No. 86–4405.**

United States Court of Appeals,
Fifth Circuit.

July 20, 1987.

Morris W. Thompson, Quiggle & Thompson, Little Rock, Ark., for plaintiff-appellant.

John R. Halliburton, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for defendant-appellee.

Before POLITZ, JOHNSON and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

LeRoy E. Kendall, Jr. brought the instant Title VII claim against his employer, the Farmers Home Administration (FmHA). 42 U.S.C. § 2000e–16. After a bench trial, the district court ruled in favor of the FmHA. We affirm.

## I.

Kendall, a black male, was employed as the county supervisor in the Jonesboro, Louisiana office of the FmHA. Kendall's office provided rural assistance through limited agricultural and rural housing loans, grants, and guaranteed programs. Kendall's job included accepting applica-

tions, analyzing loans, and making appraisals. Kendall's federal employment rating in the Jonesboro office was GS–9.

On Kendall's first day of work in August of 1980, Kendall met with district director Danny Sullivan in order to discuss office priorities. Sullivan told Kendall that the highest priority was upkeep on the rural housing inventory, which included boarding up the inventory property, cutting the lawns, and arranging for necessary repairs. The record indicates that Kendall failed to follow these instructions.

Kendall was criticized in writing in September and October of 1980 for failing to secure the inventory property; Kendall also received written notice in October criticizing his failure to submit any rural housing loan dockets. Kendall received a letter of caution in December of 1980 listing three specific instances of his unsatisfactory performance: (1) the failure to secure abandoned property and inventory property; (2) the erroneous approval of loans beyond the lending authority; and (3) the failure to submit various loan information forms in the time allotted.

Kendall's within-grade increase was withheld in May of 1981 because of unsatisfactory performance. Kendall's deficiencies included recommending loan approvals beyond the authorized limits, inaccurately appraising and undersecuring loans, and failing to obtain completed applications which caused the agency to make illegal loans. A performance conference was held on May 11th in which Kendall was informed of his unsatisfactory performance and was given the following choices: (1) accept demotion to assistant county supervisor; (2) stay in the Jonesboro office and improve his performance within sixty days; (3) seek employment in another agency; or (4) resign. Kendall chose to stay in the Jonesboro office and attempt to improve his performance.

Later reviews revealed that Kendall failed to improve his performance. These reviews were documented according to a performance appraisal system which has been approved by the Office of Personnel Management. The performance appraisal system subdivides employment tasks to provide objective categories for measuring quality, quantity and timeliness of performance. The employee is awarded one of the following numerical ratings: (1) unacceptable; (2) minimally acceptable; (3) acceptable; (4) exceeds acceptable; or (5) outstanding performance in each category. The ratings are then tallied to provide a composite appraisal rating. The numerical ratings in each category are supported by the appraiser's specific personal comments on the employee's performance in various sub-categories of job tasks. The appraisal system ranks certain categories as "critical" which are given more weight in calculating the overall composite appraisal rating.

Kendall's performance appraisal from August 10, 1980 to October 1, 1981 indicates that Kendall received an unacceptable rating in three of the seven elements, two of which were critical. Kendall's overall rating for this period was 2.6. Kendall's performance appraisal for the following year of October 1, 1981 through September 30, 1982 indicates a rating of unacceptable in four of seven elements, all of which were critical. Kendall's overall rating for this period was 1.5. Kendall's final performance appraisal, covering the period from September 30, 1982, to June 30, 1983, indicates that Kendall received an unacceptable rating in four elements, two of which were critical, and a minimally acceptable rating in another critical element. Kendall's overall rating for this period was 1.6.

Kendall was first recommended for termination on July 31, 1981. Nimrod Andrews, the FmHA state director, disagreed with the recommendation and decided to continue Kendall's employment and provide him special training. Kendall was recommended for termination again after the 1982–83 performance appraisal. This time Andrews concurred and Kendall was fired.

Kendall brought the instant lawsuit against the FmHA alleging that his dismissal was racially motivated. 42 U.S.C. § 2000e–16. After a bench trial on the merits, the district court ruled in favor of the FmHA. The district court reviewed Ken-

dall's employment history and found that he was having "serious" performance problems. The district court specifically found that the FmHA performance appraisal system was not unduly subjective.

The district court evaluated Kendall's claim under the familiar burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The district court found that Kendall's poor employment record rebutted any inference of racial discrimination because it provided a legitimate, non-discriminatory reason for the firing. The district court found that the evidence of Kendall's unacceptable performance was credible and rejected the claim that Kendall's firing was racially motivated. This appeal followed.

## II.

The *McDonnell Douglas* test puts the burden on the plaintiff to prove a prima facie case of discrimination by a preponderance of the evidence. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093. If the plaintiff succeeds, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason" for the employee's termination. *Id.* at 253, 101 S.Ct. at 1093. The plaintiff then has an opportunity to prove by a preponderance of the evidence that the reasons offered by the defendant were a pretext for discrimination. *Id.*

*Burdine* made clear that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093. Thus, the plaintiff's burden of proving pretext

> merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Id.* at 256, 101 S.Ct. at 1095 (citations omitted). It is well-settled that the ultimate issue of whether the employer intentionally discriminated against the employee is "peculiarly within the province of the factfinder." *McDaniel v. Temple Independent School District*, 770 F.2d 1340, 1347 (5th Cir.1985).

The Supreme Court has explained that the *McDonnell Douglas* test was not meant to be an "inflexible rule" to be applied in all cases. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 575, 98 S.Ct. 2943, 2948, 57 L.Ed.2d 957 (1978). We have recognized that

> *McDonnell Douglas* is only one way to establish a prima facie case of employment discrimination. In the rare situation in which the evidence establishes that an employer openly discriminates against an individual it is not necessary to apply the mechanical formula of *McDonnell Douglas* to establish an inference of discrimination; the showing has already been made *directly*.

*Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir.1980) (emphasis added). In *Ramirez* the court found that a prima facie case was established directly by proof that the city of Brownsville had a written personnel policy favoring the hiring of United States citizens. *Id.* at 169. The court therefore found it unnecessary to require proof of a prima facie case under the *McDonnell Douglas* criteria.

▪ In the instant case, Kendall argues that the district court erred by applying the *McDonnell Douglas* test in a case where there was "direct" evidence of discrimination. The "direct" evidence on which Kendall relies is the testimony of a co-worker who said she heard Sullivan refer to Kendall as a "nigger" on two occasions. Sullivan denied making the remarks. Because of the introduction of this "direct" evidence of discrimination, Kendall argues that the district court should have applied the following test from *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir.1982) (emphasis added):

> Where the evidence for a prima facie case consists, as it does here, of *direct*

testimony that defendants acted with a discriminatory motivation, if the trier of fact *believes* the prima facie evidence the ultimate issue of discrimination is proved; no inference is required.

■ Kendall's argument must fail because the district court found that the testimony regarding the racial slur was not credible. The district court specifically found that "the evidence is inconclusive about the racial slur," and "this court remains unconvinced that the incidents occurred...." The assessment of the credibility of a witness is peculiarly within the province of the district court; its rejection of the testimony of Kendall's co-worker was not clearly erroneous.

■ Kendall next argues that the mere introduction of evidence of discrimination, which can be characterized as "direct," requires the district court to find discriminatory intent on the part of the employer. We disagree. In *Jatoi v. Hurst-Euless-Bedford Hospital Authority*, 807 F.2d 1214, 1219 (5th Cir.1987), a doctor claimed that he was discriminatorily discharged because of his East Indian heritage. The doctor argued that he was not required to establish the *McDonnell Douglas* criteria because he made his prima facie case by direct evidence. *Id.* at 1219. The direct evidence consisted of testimony and statements from other doctors indicating their belief that the hospital discriminated against East Indians. *Id.* Although the court remanded for more specific findings on whether a prima facie case was established, it noted that:

> To the extent that the district court may have held that Dr. Jatoi did not establish a prima facie case through direct evidence, it was correct. The statement by Dr. Alldredge and the testimony of doctors Weinberg, Baugh, and Ghandi are not enough to make it more likely than not that Dr. Jatoi's termination was discriminatorily motivated.

*Id.* at 1220 (citations omitted).

We therefore agree with the district court that the *Lee* test for evaluating "direct" evidence of discrimination does not apply to the instant case. The district

court heard the evidence of the alleged racial slur and concluded that it was not credible. Kendall therefore failed to prove a case of racial discrimination based upon direct evidence. The district court correctly rejected the use of the Eleventh Circuit's test in *Lee* in favor of the traditional *McDonnell Douglas* burden-shifting test. We find no error in that decision.

### III.

■ Kendall next raises a series of arguments alleging that the district court misapplied the *McDonnell Douglas* test. First, Kendall contends that the district court applied the wrong test regarding the plaintiff's burden of proving pretext. The district court stated that "plaintiff must show not only that [the] employer's articulated reasons were not the sole cause of the discharge, but that discrimination 'made the difference in the decision.' *Conner v. Fort Gordon Bus Company*, 761 F.2d 1495, 1500 (11th Cir.1985)."

Although the Eleventh Circuit test employed by the district court differs slightly from our own, we see no substantive difference in the two. We recently explained that:

> In an employment discrimination case, a plaintiff may prevail either by persuading the court that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is not worthy of credence.

*Ratliff v. Governor's Highway Safety Program*, 791 F.2d 394, 400 (5th Cir.1986) (citing *Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)). *See also McDonald v. Santa Fe Trail Transportation Co.* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1976) (applying a "but for" test of causation under Title VII). Both tests focus on the ultimate issue of any Title VII case: whether the defendant intentionally discriminated against the plaintiff. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. We find no error in the district court's decision in this respect.

Kendall next contends that the FmHA appraisal system is too subjective to carry the burden of rebutting an inference of racial discrimination. We disagree.

■ The district court devoted much of its opinion analyzing the documented evidence of Kendall's performance problems and evaluating the FmHA performance appraisal system. The district court specifically found that the FmHA performance appraisal system was not unduly subjective; rather, it found that it was "as objective a system as could be devised given the nature of the performance to be reviewed." The district court found that the system's objectivity was enhanced by the appraisal worksheets which supplement the overall numerical ratings. The worksheets break down employment tasks into articulable units and provide the employer with an opportunity to submit written comments on each narrow category. The employee therefore receives an objective evaluation which puts a premium on the specificity of the comments. The district court did not err in finding that the system employed in this case is sufficiently objective to support the FmHA's articulated reasons for Kendall's firing.

Finally, Kendall argues that the district court did not adequately consider the evidence of his discriminatory treatment as compared to the treatment of two white county supervisors, Mike Mixon and Alvin Landers. Kendall contends that Mixon and Landers were demoted, rather than fired, after being cited for similar performance problems. Kendall admits that the district court addressed this issue, but he contends it should have addressed the issue twice: once in regard to establishing a prima facie case, and again in regard to Kendall's ultimate burden of proving pretext.

■ The district court explicitly found that Kendall's employment situation was not similar to that of Mixon and Landers, and we perceive no error in that determination. Both Mixon and Landers were rated at the GS-11 level, while Kendall was a GS-9. Both Mixon and Landers requested and received downgrades to GS-9 while Kendall was already a GS-9 and could only be downgraded to a training level. Finally, Mixon and Landers received overall performance appraisal ratings of 2.8 and 2.3 respectively, while Kendall's two most recent ratings of 1.5 and 1.6 were unacceptably low. In light of these differences, Kendall's attempt to compare himself to Mixon and Landers is misguided.

■ We also see no merit to the claim that the district court was required to evaluate this evidence twice. Kendall cites no authority for this proposition, and we see no reason why the district court must build redundancy into its opinions. The district court sufficiently rejected Kendall's pretext argument by analyzing Kendall's poor performance record and concluding that the FmHA's reliance on this record was credible. This argument is meritless.

For all of the foregoing reasons, the judgment of the district court is

AFFIRMED.