**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 94-40945

LARRY W. MOORE and
NAOMI S. MOORE,

Plaintiffs-Appellants,

VERSUS

UNITED STATES DEPARTMENT
OF AGRICULTURE o/b/o
Farmers Home Administration,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
( June 6, 1995 )

Before LAY[1], DUHÉ and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Nearly five years ago, Larry Moore and his wife, Naomi Moore, sued the Farmers Home Administration (FmHA), alleging that FmHA's refusal to extend them credit because they are white violated the equal protection component of the Fifth Amendment and the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f. The district court originally dismissed the suit for lack of standing,

---

[1] Circuit Judge of the Eighth Circuit Judge, sitting by designation.

but we reversed and remanded the case for further proceedings. Moore v. U.S. Dep't of Agric., 993 F.2d 1222 (5th Cir. 1993) (Moore I). On remand, the district court once again dismissed the Moores' suit, but for different reasons. The Moores appeal. We now vacate the judgment below and render judgment for the Moores, but remand the case for a determination of damages.

I.

The Agricultural Credit Act of 1987, Pub. L. No. 100-233, authorizes the Department of Agriculture (DOA) to establish "target participation rates" to ensure that members of "socially disadvantaged groups" will receive loans to acquire DOA-held farmland. 7 U.S.C. § 2003(a)(1). The Act defines a "socially disadvantaged group" as "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." Id. § 2003(d). As of December 1989, the FmHA, which is an agency within the DOA, implemented § 2003's mandate by setting aside a certain portion of DOA-held properties for "socially disadvantaged applicants" (SDAs). The FmHA would then sell SDA-designated properties exclusively to qualified minorities[2] and sell non-SDA-designated properties to any qualified applicant. The FmHA required all applicants, regardless of SDA status, to produce evidence of an "acceptable credit history."

---

[2]Current regulations further define "socially disadvantaged groups to consist only of Women, Blacks, American Indians, Alaskan Natives, Hispanic, Asians, and Pacific Islanders." 7 C.F.R. § 1955.103, at 344 (1995).

2

In December 1989, Larry Moore, a white male, applied to purchase an SDA-designated property, namely a 183-acre farm in Rayville, Louisiana. Moore did not indicate whether he qualified as an SDA, whereupon the FmHA requested further information. Moore failed to do so. The FmHA formally denied his application in December 1989, stating <u>only</u> that

> "[y]ou have failed to provide proof that you meet the criteria of SDA. (No Whites)."

The Moores filed an administrative appeal, which was summarily dismissed in February 1990 on the basis that the FmHA could not waive his unacceptable racial classification. The Moores then applied for a non-SDA-designated property. The FmHA again denied his application, this time on the basis of his poor credit history as reflected in a January 1990 credit report. The report, among other things, indicated that Larry Moore had been sporadically employed since 1967, that the Moores had declared bankruptcy in 1982, and that their home had been foreclosed on in the late 1980s.

In September 1990, the Moores filed suit against the DOA and the FmHA, alleging violations of their rights under the Fifth Amendment and the ECOA.[3] The Moores requested actual damages (i.e., loss of income from farming operations and mental anguish

---

[3]The ECOA broadly prohibits credit discrimination, stating that
> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction --
>> (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract).

15 U.S.C. § 1691(a)(1).

3

and suffering), punitive damages, and attorneys fees, but made no specific request for injunctive or declaratory relief. The district court dismissed the Moores' suit on the ground that Larry Moore had failed to complete the initial application. The Moores appealed. In June 1993, we reversed and remanded the case for further proceedings. Moore I, 993 F.2d 1222 (5th Cir. 1993). We held that the Moores' failure to complete the application did not deprive them of standing to sue.

On remand, the Moores never amended their pleadings. The FmHA prior to trial offered alternative defenses to its actions: (1) notwithstanding its board prohibition against discriminatory lending, the ECOA exempts refusals to extend credit that are pursuant to "any credit assistance program expressly authorized by law for an economically disadvantaged class of persons," 15 U.S.C. § 1691(c)(1); and (2) the ECOA does not include a waiver of sovereign immunity. At trial, however, the FmHA changed tack and defended its actions on a third theory: the Moores failed to make a prima facie case of discrimination.[4]

Providing alternative reasons, the district court dismissed the Moores' suit in July 1994. The court first held that the ECOA does not include a waiver of sovereign immunity, despite the fact that the FmHA had proffered but eventually abandoned precisely the same theory. The court alternatively held (as the FmHA argued at trial) that the Moores failed to make out a prima facie case of

---

[4]In particular, the FmHA argued that the Moores failed to demonstrate that they were qualified for an extension of credit.

4

discrimination.  The elements of an ECOA prima facie case, according to the district court, are: (1) the applicant is a member of the protected class; (2) the applicant in fact applied and was qualified for credit; and (3) the applicant was denied credit notwithstanding his qualifications.[5]  The court easily concluded that the Moores could not establish the second element, i.e., that they were qualified for credit, and therefore dismissed the Moores' suit.  The Moores, once again, appeal.

## II.

We are obligated to satisfy ourselves that the jurisdiction of both this court and the district court have been properly established, "`even though the parties are prepared to concede it.'"  Mocklin v. Orleans Levee Dist., 877 F.2d 427, 428 n.3 (5th Cir. 1989) (quoting Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986)).  And because "[s]overeign immunity is jurisdictional in nature," FDIC v. Meyer, 114 S. Ct. 996, 1000 (1994), we must now determine whether the ECOA contains a waiver of the United States' sovereign immunity.  As we mentioned, the district court below concluded that Congress never "unequivocally expressed" an intention to waive the United States' sovereign immunity in ECOA claims.  The court did concede that the plain language of the ECOA provides that governmental entities are liable under the Act.  See 15 U.S.C. § 1691a(e),(f) (respectively defining

_____

[5]The court correctly noted that very little ECOA case law exists.  But given the similarity between an ECOA refusal-to-extend-credit case and a Title VII refusal-to-hire case, the court borrowed freely from the wealth of Title VII case law to craft the elements of an ECOA prima facie case.

"creditor" to mean "person," and "person" to mean "government or governmental subdivision or agency"). But the court construed this to mean that Congress waived the liability of state governmental entities only, leaving intact the United States' immunity.

There are two problems with the district court's reasoning. First, as the FmHA points out, Congress has used identical language in a closely related statute, yet inserted an additional provision preserving the United States' immunity. Specifically, Congress codified the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667e, and the ECOA, 15 U.S.C. §§ 1691-1691f, as Subchapters I and IV of the Consumer Credit Protection Act, respectively. The TILA defines "person" to mean any "government or governmental subdivision or agency," see id. § 1602(c),(d),(f), just as the ECOA does. Yet Congress also expressly preserved the United States' sovereign immunity against TILA claims. Id. § 1612(b). Clearly, TILA indicates that Congress intended "government or governmental subdivision or agency" to include the United States, because otherwise it would not have specifically preserved the United States' immunity unless it believed that such immunity had been previously waived. Considering that ECOA was passed after TILA[6] and does not include an express preservation of U.S. sovereign immunity as did TILA, we conclude that Congress intended to waive U.S. immunity in the ECOA.

---

[6]The TILA was enacted in 1968, see Pub. L. No. 90-321, 82 Stat. 146, and the ECOA was enacted in 1974, see Pub. L. No. 93-495, 88 Stat. 1521.

Second, and perhaps equally compelling, the district court's conclusion creates a paradox. The courts have developed virtually identical tests for determining whether Congress has waived the United States' sovereign immunity and whether it has abrogated the states' Eleventh Amendment immunity. That is, Congress' intention must be either "unequivocally expressed" (when the United States' immunity is at issue) or "unmistakably clear" (when the states' immunity is at issue). In Interfirst Bank Dallas, N.A. v. United States, 769 F.2d 299, 310 (5th Cir. 1985), we stated that a waiver of the United States' sovereign immunity "must be expressly stated by Congress and should not be inferred." For support, we cited among other cases Atascadero State Hospital v. Scanlon, 473 U.S. 234 (1985), wherein the Supreme Court discussed the test for determining whether Congress has abrogated the states' Eleventh Amendment immunity. We purposely cited Scanlon in Interfirst Bank for one reason: the two tests are extremely similar, if not identical. See also United States v. Nordic Village, Inc., 112 S. Ct. 1011, 1016 (1992) ("As in the Eleventh Amendment context, the `unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression of statutory text.") (quoting Hoffman v. Connecticut Dep't of Income Maintenance, 492 U.S. 96, 104 (1989)); Pennsylvania v. Union Gas Co., 491 U.S. 1, 31-32 (1989) (Scalia, J, concurring and dissenting) (states' Eleventh Amendment immunity reflected "a consensus that the doctrine of sovereign immunity, for States as well as the Federal Government,

was part of the understood background against which the Constitution was adopted") (emphasis added).

So, given the uniformity with which courts must assess any governmental immunity, the district court's reasoning cannot withstand scrutiny.  The ECOA either waives federal and state immunity together, or waives none at all.  But it certainly cannot, as the district court concluded, abrogate the states' immunity and preserve the United States' immunity.  We, like the parties, read the ECOA to include a broad waiver of governmental immunity.  The plain language of the ECOA unequivocally expresses Congress' intentions: governmental entities are liable under the Act.  See 15 U.S.C. § 1691a(e),(f) (respectively defining "creditor" to mean "person," and "person" to mean "government or governmental subdivision or agency").[7]  We therefore have jurisdiction to hear the Moores' appeal.

## III.

The Moores allege that the FmHA violated their rights under both the equal protection component of the Fifth Amendment and the ECOA.  We will address each claim separately.

## A.

With regard to the equal protection claim, the Moores' amended complaint names only the FmHA as a defendant and requests only monetary relief (e.g., actual damages, punitive damages, attorneys fees).  The Moores never made any specific request for any type of

---

[7]See also 15 U.S.C. § 1691e(b) (limiting ECOA claims against governmental entities to actual damages only).

injunctive or declaratory relief.  In doing so, the Moores have failed to properly state an equal protection claim.  We suggested in Moore I that "the Moores' allegations pose more than a possibility of recovery under a Bivens-type action founded in the equal protection component of the Fifth Amendment."  Moore I, 993 F.2d at 1223.  But, as the district court below noted, the Supreme Court's intervening decision in FDIC v. Meyer, 114 S. Ct. 996 (1994), forecloses the Moores from bringing a Bivens claim.  The Moores have sued only the FmHA.  And because Meyer established that Bivens-type claims cannot be brought against federal agencies (as opposed to federal officers), id. at 1004-05, the Moores cannot rely on Bivens.  Their equal protection claim fails.

B.

Thus, the Moores' only basis for relief is the ECOA.  Interestingly, the FmHA concedes liability in this instance.  Specifically, the FmHA argues that its only viable defense would have been to argue that the SDA program is exempted from the ECOA's broad prohibition against credit discrimination.  See 15 U.S.C. § 1691(c) (exempting from liability any "credit assistance program expressly authorized by law for an economically disadvantaged class of persons").  The FmHA admits, however, that it abandoned this defense at trial when it chose to argue, in lieu of a § 1691(c) defense, that the Moores failed to make a prima facie case of discrimination.

But the FmHA on appeal has abandoned that defense, too.  The agency concedes that its December 1989 letter to Larry Moore,

9

wherein it stated that "[n]o whites" could qualify for SDA-designated properties, constitutes direct evidence of racial discrimination. As such, the Moores are entitled to bypass the McDonnell Douglas burden-shifting framework commonly applied in discrimination cases and proceed directly to the question of liability. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985) ("the McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination"). As we have stated before, "`In the rare situation in which the evidence establishes that an employer openly discriminates against an individual it is not necessary to apply the mechanical formula of McDonnell Douglas to establish an inference of discrimination.'" Kendall v. Block, 821 F.2d 1142, 1145 (5th Cir. 1987) (quoting Ramirez v. Sloss, 615 F.2d 163, 168 (5th Cir. 1980)). In short, the FmHA has no defense to the Moores' ECOA claim. The FmHA acknowledges this fact and thus concedes the claim. We accept the FmHA's concession and render judgment for the Moores as to their ECOA claim.

The question of damages, however, still remains. The Moores requested actual damages (i.e., loss of income from farming operations and mental anguish and suffering), punitive damages, and attorneys fees. The FmHA counters that the Moores' damages, at most, are nominal given that their poor credit history independently precludes them from qualifying for a non-SDA-designated property. In fact, the FmHA notes, the Moores' second application for a DOA-held property was denied solely on the basis of their

10

poor credit history. Either way, the district court is the appropriate venue for determining the Moores' damages, if any. We note only that, while the after-acquired evidence of the Moores' poor credit history cannot defeat the FmHA's liability, the evidence can aid the court in assessing the Moores' damages. <u>See</u> <u>McKennon v. Nashville Banner Publish. Co.</u>, 115 S. Ct. 879, 883-87 (1995) (after-acquired evidence of wrongdoing by an employee terminated for unlawful reasons does not relieve the employer of liability for the unlawful termination, but it is useful in fashioning the appropriate remedy).

## IV.

The district court erred in concluding that the ECOA does not include a waiver of the United States' sovereign immunity. Furthermore, we accept as correct the FmHA's concession on appeal that it is liable to the Moores under the ECOA. However, the Moores' damages, if any, must be determined by the district court. Accordingly, we VACATE the judgment of the district court, RENDER judgment for the Moores as to their ECOA claim, and REMAND the case for a determination of damages.