UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-40716
Summary Calendar

_____

DARWIN PEGUESE,

Plaintiff-Appellant,

versus

J.R. BORUP, Individually; J.W. COONROD, Individually; MICHAEL T.
GODINICH, Individually; J.M. LANE, Individually; WENDY L.
MORRISON, Individually; J.H. SMITH, Individually; GEORGE W.
WYLLIE, Individually; GALVESTON-TEXAS CITY PILOTS; GALTEX PILOTS
SERVICE CORPORATION,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
(G-00-CV-519)

February 28, 2002

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Maintaining that the individual defendants, known collectively
as the Galveston-Texas City Pilots (Pilots), and a corporation
owned by the Pilots, Galtex Pilots Service Corporation (Galtex),
discriminated against him by declining to select him as a Galveston
deputy pilot, Darwin Peguese appeals the summary judgment awarded
the Pilots and Galtex on Peguese's claims for: racially-motivated

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

deprivation of the right to make and enforce contracts, in violation of 42 U.S.C. § 1981(a); conspiracy to deprive that right, in violation of 42 U.S.C. § 1985(3); and state-law fraud, intentional infliction of emotional distress, and conspiracy to violate the constitutional right to contract. **AFFIRMED**.

I.

The hiring process for deputy pilots is codified in the Texas Transportation Code. The Board of Pilot Commissioners for the Ports of Galveston County (Pilot Board), which is *not* a party to this action, is charged with "accept[ing] applications for pilot licenses and certificates and determin[ing] whether each applicant meets the qualifications for a pilot". TEX. TRANSP. CODE § 67.017(2). The Pilot Board does not have an administrative staff; it delegates to the Pilots the responsibility for initially collecting applications; and the Pilots forward those applications to the Pilot Board so it may review applicant qualifications. After completing the review, the Pilot Board "provide[s] names of all qualified applicants for certificates to each pilot association office [*e.g.*, the Pilots] of Galveston County". *Id.* § 67.017(3). The Pilots may only appoint deputy pilots approved by the Pilot Board. *Id.* § 67.038–.039.

The Pilots received Peguese's application, along with approximately 200 others, and forwarded it to the Pilot Board. Because of several deficiencies in his application, the Pilot Board

2

did not approve Peguese as a qualified applicant. Specifically, Peguese had failed to: (1) explain why he left prior jobs; (2) identify supervisors at prior jobs; and (3) include telephone numbers for his references. The Pilots selected two candidates — one black and one white.

Peguese filed this action. With respect to the federal claims, the district court granted summary judgment to the Pilots because of the absence of a genuine issue of material fact as to intentional racial discrimination. The district court noted that evidence of intentional discrimination "is an essential element of a claim for relief under section 1981". *See **Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio***, 40 F.3d 698, 714 (5th Cir 1994). Similarly, a § 1985(3) plaintiff must proffer evidence of "invidiously discriminatory animus behind the conspirators' action". ***Griffin v. Breckenridge***, 403 U.S. 88, 102 (1971); *see also **Earnest v. Lowentritt***, 690 F.2d 1198, 1202-03 (5th Cir. 1982).[2]

---

[2]Citing ***Jatoi v. Hurst-Euless-Bedford Hosp. Auth.***, 807 F.2d 1214, 1218 n.2 (5th Cir.), *modified*, 819 F.2d 545 (5th Cir. 1987), *cert. denied sub nom.* 484 U.S. 1010 (1988), and concluding that the same issue — intentional discrimination — was critical to the § 1981 and § 1985 claims, the district court analyzed only the § 1981 claim expressly. Peguese does not take issue with that approach. In part II, and because the § 1985 claim is for conspiracy to violate a right secured by § 1981, we likewise address only the § 1981 claim. *See **Ramirez v. Sloss***, 615 F.2d 163, 167 n.4 (5th Cir. 1980) ("The claim under 42 U.S.C. § 1985(3) alleges a conspiracy to violate section[] 1981[;] therefore our discussion is confined to the latter section[].").

3

The district court concluded that, in the light of his incomplete application, Peguese was "unqualified in the starkest of terms: Defendants were legally barred from selecting him". The district court ruled that summary judgment was proper because qualification is a *sine qua non* of a racial discrimination claim under both methods of proving a *prima facie* case of discrimination (by direct evidence or by an indirect or inferential method of proof, *see Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1216 (5th Cir. 1995)).

The district court rejected Peguese's assertion that the Pilots had *contributed* to his not being qualified by failing to inform him his application was incomplete. Peguese offered summary judgment evidence in the form of a transcript of surreptitiously-recorded telephone conversations with a William Kern, in which Kern stated that one of the Pilots had sent letters to applicants notifying them of deficiencies in their applications. Because the large majority of the applicants were white, Peguese inferred that his not receiving such a letter of deficiency was attributable to the conspiracy to discriminate against him. The district court noted that Kern had not stated that Peguese was singled out for different treatment and that it was actually Peguese who informed Kern that he had not received a letter of deficiency. Accordingly, the district court declined to infer that Peguese's not receiving a letter was attributable to his race.

4

As to Peguese's state-law claims, the district court granted the Pilots summary judgment on:  the fraud claim, because, being unqualified, Peguese suffered no injury; the intentional infliction of emotional distress claim, because Peguese had not proffered evidence of extreme and outrageous conduct; and the claim for conspiracy to violate Peguese's constitutional right to contract, for essentially the same reasons the court rejected the federal claims.

## II.

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." **Your Ins. Needs Agency Inc. v. United States**, 274 F.3d 1001, 1003 (5th Cir. 2001).  "Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." **DeLeon v. Lloyd's London, Certain Underwriters**, 259 F.3d 344, 347 (5th Cir. 2001); *see also* FED R. CIV. P. 56(c).  "On a motion for summary judgment, a court reviews the facts in the light most favorable to the non-movant." **Pratt v. City of Houston**, 247 F.3d 601, 606 (5th Cir. 2001).

## A.

Peguese contends the district court erred in ignoring "direct and circumstantial evidence" of intentional discrimination against him.  "[A § 1981] plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such

actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under [§ 1981]." *Ramirez v. Sloss*, 615 F.2d 163, 168-69 (5th Cir. 1980) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1979); internal quotation marks omitted) (applying Title VII principles to § 1981 employment discrimination). Peguese maintains there is "a gross disparity in the way that [he], a black applicant" was treated as compared to how the "180-200 primarily white applicants" were treated; but, he has proffered no evidence as to the racial composition of those applicants who did or did not receive letters of deficiency. All that may be said with any certainty is that Peguese did not receive such a letter. Given the circumstances of this case — especially the fact that one of apparently only three black applicants was chosen, from a pool of approximately 200 white applicants, to fill one of the *two* available positions — it cannot be inferred that Peguese's not receiving a letter was attributable to his race.[3]

### B.

As for Peguese's state-law claims, he correctly acknowledges they turn largely on the disposition of his federal claims. He

---

[3]Peguese construes the Pilots' hiring of a black applicant as an effort to "thwart" an EEOC complaint Peguese had filed. Such an assertion, if true, *might* be tangentially relevant to a retaliation claim. However, Peguese's presses only a discrimination claim on appeal. To the extent he raised a retaliation claim in district court, such claim is deemed waived. *See, e.g., United States v. Maldonado*, 42 F.3d 906, 910 n.7 (5th Cir. 1995).

fails to demonstrate:  injury, as to the fraud claim; extreme and outrageous conduct, as to the intentional infliction of emotional distress claim; and discrimination, as to the claim for conspiracy to violate his right to contract.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*