Robert G. COLLIER, Plaintiff,

v.

SERVICE AMERICA CORPORATION,
Defendant.

Civil No. PJM 95–2617.

United States District Court,
D. Maryland.

July 26, 1996.

Mary Ann Ryan, Laurel, MD, for Plaintiff.

Darrell R. VanDeusen, Kollman & Shee-han, P.A., Baltimore, MD, Jana H. Carey, Valerie F. Portner, Venable, Baetjer & How-ard, Baltimore, MD, Jill L. Rosenberg, Or-rick, Herrington & Sutcliffe, New York City, for defendant.

## OPINION

MESSITTE, District Judge.

Plaintiff Robert G. Collier sues Defendant Service America Corporation pursuant to the Age Discrimination in Employment Act, as amended, ("ADEA"), 29 U.S.C. §§ 621–634 (1985) and Maryland and Prince George's County law.[1] Service America has filed a

---

1. Although Plaintiff's Amended and Supplemental Complaints do not specify, presumably the state law he refers to is Article 49B, Section 16 of the *Maryland Code* and the County law is Section 2–222 of the *Prince George's County Code.* Defendant questions the viability of the claim for

Motion for Summary Judgment which Collier opposes. Having considered the Motion, Opposition, and Reply, the Court will GRANT the Motion in its entirety.

## I.

At the time of his discharge on October 13, 1993, Collier, a cafeteria manager, was 57 years of age and had worked for Service America or its predecessor for approximately 18 years. From January 1992 until he was let go, Collier had charge of the company's food contract operation at Litton Systems, Inc., located in College Park, Maryland. Initially Collier received positive ratings and commendations from Litton, especially its liaison with Service America, Timothy Edwards. Eventually, however, he became the object of complaints regarding customer service, including indications that his manner was gruff and that he was unresponsive to certain requests from customers.

Collier suggests that whatever discontent there was with his performance was a result of factors beyond his control. Litton was in the midst of downsizing and its budget for food service was being cut. Indeed, Collier says he was instructed by Service America not to discuss any cutback in services with Litton personnel if they complained, but instead to allow them to infer that he, not Service America, was responsible for the unwelcome changes. Collier points out that during the eight or nine months prior to his arrival at Litton, three of his predecessors transferred out of the job and in the year that the Litton contract survived following his own termination, two more individuals served in the position.

Collier suggests that his relations with Litton took a noticeable turn downward after what he portrays as a questionable overture made to him by Edwards, Litton's contact with Service America. Collier claims that, in February 1993, he was approached by a Litton employee whom he believed was speaking for Edwards. The employee allegedly asked Collier if he was interested in working directly for Litton, an inquiry that Collier took to indicate that Litton had in mind to terminate its contract with Service America. Collier informed Service America of the incident, after which Litton personnel, especially Edwards, intensified their criticism of his performance.

Service America nevertheless was confronted with a significant number of complaints about Collier by Litton personnel. Collier was observed to be abrupt and unresponsive, particularly when customers made requests for catering services on short notice. Edwards also found him to be argumentative and defensive in responding to customer suggestions or criticisms. During his first year at the facility, Collier's Senior District Manager, Alexandra Jadali spoke to him about the complaints and in March, 1993, a customer survey, part of which concerned Collier's performance, was conducted at the facility. In the survey, a significant number of Litton employees expressed dissatisfaction with Collier's customer service and attitude and described incidents in which he had been rude to them.[2]

---

violation of the County Code on the ground that Plaintiff never filed a complaint with the Prince George's County Human Relations Commission (as opposed to the Equal Employment Opportunity Commission), as required by Article 49B, Section 42(b)(2) of the *Maryland Code.* Given the Court's decision on the ADEA claim, it is unnecessary to decide whether Collier met any separate State or County filing requirement. The state and county claims, along with the federal claim, fail on the merits.

2. The survey was conducted in March, 1993, at the request of Edwards. According to an affidavit by Pamela Dye, one of Collier's supervisors, questionnaires were distributed to several hundred Litton employees, of whom slightly over 100 responded. Although 31.6% of the respondents answered "no" when asked if Collier was responsive to their suggestions and criticisms and 25% indicated they were dissatisfied with management responsiveness, the more relevant consideration for present purposes is what percentage of the total number of employees was dissatisfied with Collier. Assuming this was a random sample, statistics would suggest a high probability that at least 15% of Litton's 500 employees shared negative feelings about Collier which, according to the Dye affidavit, would definitely place into question Collier's compliance with Service America's expectation that its managers have at least an 85% customer satisfaction rate. Collier does not seriously challenge the statistical analysis put forth by Service America nor its standards for customer satisfaction.

Ultimately Service America determined that Collier had to be taken off the Litton job. At or about that time, at least one of his supervisors suggested that he might be placed as a food service manager in a prison facility in the State of Pennsylvania, but Collier declined to accept. Collier contends that the offer was never firm, but also concedes that in view of his wife's frail physical condition he was disinclined to leave the area. Collier was advised that his termination was by reason of his poor customer relations as well as his alleged failure to enroll in a customer relations seminar as suggested by his supervisor.

## II.

■ Summary judgment is appropriate if there is no genuine issue of material fact that could lead a rational trier of fact to find for the non-moving party. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). While all justifiable inferences must be drawn in favor of the non-movant, *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990), the non-moving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. *Beale v. Hardy*, 769 F.2d 213 (4th Cir.1985).

## III.

■ Under the ADEA, it is unlawful for an employer to discharge an employee based on the employee's age, 29 U.S.C. § 623(a)(1) (1985). The circumstances must suggest that but for the employer's motive to discriminate on this basis, the employee would not have suffered the adverse action. *Fink v. Western Elec. Co.*, 708 F.2d 909 (4th Cir.1983). Plaintiff's evidence may be either of the direct or circumstantial type or may proceed according to the judicially created scheme originally used in Title VII cases. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), as adapted to ADEA cases. *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230 (4th Cir.1982).

■ Collier offers as direct evidence of intentional discrimination the fact that his supervisor, Alexandra Jadali, referred to him on at least ten occasions as "Old Man," without "joviality or lightheartedness" and inappropriately to the occasion. A second supervisor, Pamela Dye, on a few occasions allegedly called him "Pops," though Collier concedes it "was not taken so seriously by him." These sobriquets, however, indicate no particular preconception about Collier's competence as a worker nor do they evidence an intent to discriminate against him in employment because of his age. Although age-related statements may sometimes evidence discriminatory intent, *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 276 (4th Cir.1995); Plaintiff must show a nexus between the alleged discriminatory remarks and the employment decision at issue. *E.E.O.C. v. Clay Printing*, 955 F.2d 936, 942 (4th Cir.1992). The Fourth Circuit has placed this barrier extremely high. Statements such as "too many people have been around here too long and make too much money" have been found insufficient as evidence of age discrimination. *Clay Printing*, 955 F.2d at 942. Even the statement, "O'Connor, you are too damn old for this kind of work," made by a supervisor two weeks before the discharge at issue, was found to be insufficient evidence of discriminatory intent because it was not clearly linked to the actual termination. *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 549 (4th Cir.1995), *rev'd on other grounds*, —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The most that can be said of the sporadic age-related remarks in the present case is that they were insensitive.

■ Collier also suggests that between 1992 and 1994, of fifteen managers under Jadali, eleven were terminated all of whom were over forty. This anecdotal evidence does not help. Not only does Collier fail to cite the ages of the managers who remained; there is hardly any indication of the ages of the several managers who served before and after him at the Litton site, the more rele-

vant pool.[3] Apart from that, the data do nothing to alter the basic fact that a substantial number of customers were dissatisfied with Collier's performance, a circumstance that obviously had nothing at all to do with his age. While anecdotal evidence may sometimes, in tandem with other considerations, carry a plaintiff's burden of persuasion, the overall evidence must still point to age discrimination. *Tuck v. Henkel Corp.*, 973 F.2d 371 (4th Cir.1992), *cert. denied* 507 U.S. 918, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). Collier's purported direct and circumstantial evidence, as a matter of law, simply do not.

■ Collier seeks salvation in the *McDonnell Douglas* method of proof. Applying the factors of that case, he must therefore show that:

(1) he was a member of the protected age group, *i.e.* over age 40;

(2) he was discharged;

(3) at the time of the discharge, he was performing up to the employer's legitimate expectations; and

(4) thereafter he was replaced by someone of comparable or lesser qualifications substantially younger than he. *O'Connor*, ⸺ U.S. at ⸺, 116 S.Ct. at 1310.

■ A prima facie showing, however, does no more than create a presumption of discrimination; the employer may rebut it by articulating a legitimate nondiscriminatory reason for its action. See *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Following such showing, Plaintiff may still prevail by demonstrating that the employer's reason was pretextual and that age was a more likely reason for the action. *See Burdine*, 450 U.S. 248, 101 S.Ct. 1089; *see also Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). But to survive a motion for summary judgment, plaintiff must show that the record contains enough evidence to create a genuine issue of material fact both on the issue of pretext and the ultimate issue of discriminatory intent. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The Court will assume that Collier has made out a prima facie case under *McDonnell Douglas*. He was 57 years of age when discharged; he was arguably performing up to his employer's legitimate expectations,[4] and was replaced by someone of equal or lesser qualifications outside the protected class.[5]

■ At the same time, Service America has come forward with a legitimate nondiscriminatory reason for terminating him. It has cited substantial customer dissatisfaction with Collier's performance, including personality factors that can hardly be attributed either to Collier's age or any bound-to-fail scheme set up by Service America.

Collier questions why, if his performance was so inadequate to occasion his dismissal, he was offered an alternative position.

---

3. According to Collier's exhibits, at least one of the managers who went through the Litton site without being terminated was about 50 years of age. That manager and one other former Litton site-manager who was 30 years of age were later terminated at other sites.

4. One of the difficulties in this case, at least as far as Service America is concerned, is articulating precisely what its legitimate expectations were. Assuming, as is apparently the case, that Service America inflated the qualifications on Collier's resume, it can hardly be a legitimate expectation that Collier would measure up to the inflated qualifications. The Court will assume that Service America at most had the right to expect that Collier would live up to his actual as opposed to inflated qualifications and that, in the main, he was doing so. On the other hand, positive customer relations are presumably a legitimate expectation of any employer in a service business regardless of the actual qualifications of the employee. Logically, then, the matter of customer relations should factor in, when considering whether an employee situated as Collier was has made out a *prima facie* case under *McDonnell Douglas*. Nevertheless, with the exception of the customer service factor, the Court will assume that Collier has established that he was performing up to Service America's legitimate expectations. The matter of his performance with regard to customer relations will be revisited in connection with Service America's legitimate nondiscriminatory reason for terminating Collier.

5. Service America argues that Collier's replacement was better qualified than he because she did not suffer from the same customer relations deficiency he did. As stated in Footnote 4, the Court will consider the matter of customer relations at a subsequent stage of its analysis.

Apart from this argument contradicting his earlier suggestions that the offer was never firm and he was disinclined to take it, there is a simple enough explanation. Customer relations in a prison setting are presumably a somewhat less delicate matter than in other venues.

Collier challenges the other reason given for his termination, i.e. his failure to enroll in a customer relations seminar, saying that he attempted to enroll through his supervisor but she did nothing about it. The argument does little to advance Collier's cause. The fact remains that a significant number of individuals at Litton expressed unhappiness with his performance; indeed, Edwards on behalf of Litton requested on at least two occasions that Collier be removed. Service America, as the food service provider at Litton, was entitled to respond to that reality whatever its genesis.

Not only is there no evidence of pretext, ultimately there is also no evidence of discriminatory intent, the other element that Collier must prove in order to survive summary judgment. As indicated, isolated and ambiguous references to "Old Man" and "Pops" are insufficient as a matter of law to imply age discrimination. Collier's anecdotal evidence regarding older managers crumbles of its own weight. His sample is not only too small to be statistically significant; it in no way speaks to the ages of the persons retained. No reasonable trier of fact could deduce age discrimination on this record.

## IV.

Accordingly the Court will GRANT Defendant's Motion for Summary Judgment in all respects.

A separate Order will be entered implementing this decision.