James A. FAULKNER, Plaintiff,

v.

Daniel R. GLICKMAN, Secretary
of Agriculture, Defendant.

No. CIV. H–00–2167.

United States District Court,
D. Maryland.

Nov. 19, 2001.

David R. Thompson, Cowdrey, Thompson & Karsten, Easton, MD, Kenneth David Schisler, Law Office, Easton, MD, for Plaintiff.

Stephen M. Schenning, United States Attorney, Baltimore, MD, Larry D. Adams, Lynne A. Battaglia, U.S. Attorney's Office, Baltimore, MD, for Defendant.

*MEMORANDUM AND ORDER*

ALEXANDER HARVEY, II, Senior District Judge.

For many years, James A. Faulkner ("Faulkner") has been a Caroline County dairy farmer who since 1970 has been borrowing money from the United States Department of Agriculture. In this civil action, plaintiff Faulkner is seeking damages and other relief under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* (the "ECOA"). Named as defendant in the amended complaint is Daniel R. Glickman, Secretary of Agriculture ("Glickman").

Plaintiff's original complaint was filed in this Court on July 14, 2000. That complaint named as defendants Farm Service Agency ("FSA"), Francis E. Spray ("Spray"),[1] James M. Voss ("Voss")[2] and

---

1. Spray is the Farm Credit Manager for the FSA in its Caroline County Office.

Glickman. Rather than filing an answer to the amended complaint, defendants responded by filing a motion for summary judgment.

In its Memorandum and Order of January 17, 2001, this Court denied defendants' motion for summary judgment but dismissed FSA, Spray and Voss as defendants in the case. In that ruling, the Court noted that only fragmentary evidence was before it at that early stage of the case and concluded that, when the meager facts of record were viewed in the light most favorable to the plaintiff, the issues raised could not then be decided in favor of defendant Glickman as a matter of law. The parties were directed to proceed with discovery, and defendants' motion was denied without prejudice to the right of defendant Glickman to once again move for summary judgment at a later date if the facts established by discovery would support such a motion.

With leave of Court, plaintiff was thereafter permitted to file an amended complaint. Count 1 of the amended complaint alleges a violation of § 1691(a)(1). In that Count, plaintiff asserts that defendant illegally discriminated against him on the basis of his marital status and/or his age in denying him a farm operating loan, in denying loan referrals and in withholding various service programs administered by the FSA. Count 2 of the amended complaint alleges a violation of § 1691(d) and also a violation of certain ECOA implementing regulations. In that Count, plaintiff asserts that agents of the Secretary of Agriculture unlawfully delayed the processing of his application for a farm operating loan, causing his existing obligations to the FSA and to other creditors to become delinquent.

In both Counts, plaintiff seeks extensive and complicated relief. He has requested: (1) $450,000 in compensatory damages; (2) an order granting him the right to participate in the procedure for establishing damages recognized in *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C.1999); (3) an injunction requiring defendant to terminate foreclosure proceedings and enjoining defendant from proceeding with any new foreclosure proceedings in connection with a loan or debt of the plaintiff; (4) an injunction requiring defendant to give plaintiff full and fair treatment as required by federal law; and (5) an award of reasonable attorneys' fees and costs.

Pursuant to Scheduling Orders entered by the Court, the parties have engaged in discovery.[3] Defendant has now filed a renewed motion for summary judgment. Besides opposing that motion, plaintiff has filed a motion for partial summary judgment, requesting the Court to enter summary judgment in his favor as to Count 2 of the amended complaint. Memoranda and exhibits, including affidavits, excerpts from depositions, and other evidentiary materials, have been submitted by the parties. A hearing on both pending motions has been held in open court.

Following its review of the record before it, this Court, after due consideration of the contentions of the parties, has concluded that defendant's motion for summary judgment must be granted in part and denied in part and that plaintiff's motion for partial summary judgment must be denied. Except as to one of the plaintiff's ECOA claims, material facts in the case are disputed, and the disputed issues which arise cannot be finally resolved before trial by way of the pending motions.

---

**2.** Voss was formerly Executive Director of the FSA for the State of Maryland.

**3.** Plaintiff has contended that all discovery has not as yet been completed.

## I

### Background Facts

Plaintiff Faulkner is presently 61 years of age and has been a dairy farmer for some 30 years in both Caroline and Cecil County. He has recently sold his cows and is now working as a maintenance man in a poultry house. Ever since he began dairy farming, Faulkner has been a borrower from the Farmers Home Administration ("FmHA") and from its successor agency, the FSA.[4] Over the past 30 years, Faulkner has received fourteen loans from the FSA, four of which remain outstanding today. At the present time, Faulkner is indebted to the FSA in the amount of some $130,000. Before the occurrence of the events which led to this litigation, Faulkner had never had any delinquencies in connection with his borrowing from federal agencies.

In the summer of 1995, Faulkner began having financial difficulties because of a drought and the low production of his cows due to excessive heat. In August of 1995, he contacted the Caroline County office of the FSA and spoke with Spray who was then the government agent responsible for making new loans and servicing old loans in Caroline County. Under Faulkner's loan agreements, a payment in the amount of $15,019 was due on January 1 of each year. Faulkner had been making monthly installment payments to the FSA in the amount of $1,252 by way of assignments of the proceeds of his milk sales, and he requested that the FSA temporarily release his milk assignments so that he would be able to use those funds to pay other creditors. This request was granted by Spray. According to Faulkner, Spray also told him that his loans would be deferred during the period when the milk assignments were being released. Spray denies that any such agreement was reached between the parties, and Faulkner was not thereafter granted a deferral of payments on his loans. As result, Faulkner later became delinquent. Faulkner contends that Spray misled him and that Spray's refusal to defer his loans was the initial occurrence in a series of harmful acts of mistreatment and discrimination undertaken against him by the FSA.

At the time, Faulkner was having marital difficulties with his wife. Faulkner and his wife separated on April 1, 1996, and they are now divorced. As a part of the marital settlement, Faulkner had planned for his wife to receive a 26.5 acre tract of land which he had purchased in 1990. Although requested to do so, Faulkner did not permit the FSA to obtain a lien on that property to serve as collateral for the operating loan later requested by him. Beginning in the early fall of 1995, Faulkner began working with Mark G. Davis ("Davis"), an agribusiness management specialist who was under contract with the FSA. On November 6, 1995, Faulkner applied to the FSA for a $30,000 operating loan to be used to purchase some thirty high quality cows. On December 14, 1995, Spray sent Faulkner a letter indicating that his application was "still incomplete". This letter informed Faulkner that his application would be withdrawn if the additional requested information was not received by December 22, 1995, 8 days later. Faulkner submitted the requested information on December 21, 1995, but did not furnish a legal description of the 26.5 acre parcel. On January 1, 1996, because the milk assignments had been released, Faulkner was in partial default on his loan, and he was then considered by the FSA to be a delinquent borrower as of January 31,

---

4. In 1970, the Faulkners received their first farm operating loan in the amount of $25,000.

1996, because his account was past due by over 30 days. On February 27, 1996, Spray sent a letter to Faulkner informing him that his application for a loan had been withdrawn.

Spray did not send Faulkner a delinquency notice until September 6, 1996 when he also provided Faulkner with information regarding servicing options. On October 18, 1996, Faulkner submitted a document on an FSA form requesting consideration for FSA loan servicing. On November 6, 1996, Spray sent a notice to Faulkner advising him that his servicing request was incomplete. During this time period, comments were made by Spray in a meeting between him and Davis, indicating that Faulkner was getting too old for farming. In early January of 1997, Faulkner called Voss, then the Maryland Executive Director of the FSA, and requested assistance. As the State Director, Voss was authorized to make exceptions to the FSA requirement that a borrower's loan servicing request had to be completed within 60 days. Voss returned Faulkner's call and informed him that he would not authorize an extension of the date for completion of the servicing request. During this conversation, Voss asked Faulkner how old he was, and when told that Faulkner was 56, Voss replied, "Well Jim, the age you're getting, you're getting too old to fool with cows." On January 23, 1997, Spray sent Faulkner letters informing him that the FSA was going to accelerate his loans because he had not properly requested loan servicing.

After unsuccessfully seeking relief in administrative proceedings, Faulkner filed this civil action in this Court on July 14, 2000.

## II

### Applicable Principles of Law

The principles to be applied by this Court in considering a motion for summary judgment under Rule 56, F.R.Civ.P., are well established. A party moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Phoenix Sav. & Loan, Inc. v. Aetna Cas. Co.,* 381 F.2d 245, 249 (4th Cir.1967), the Fourth Circuit Court of Appeals summarized the principles applicable under Rule 56 as follows: "It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Id.* Hence, the party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cram v. Sun Ins. Office, Ltd.,* 375 F.2d 670, 674 (4th Cir.1967).

The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Barwick,* 736 F.2d at 958. This burden is met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.* Nevertheless, "[t]he facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to

the party opposing the motion." *Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1004–05 (4th Cir.1987), *cert. denied*, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985)).

■ Under the ECOA, it is unlawful for a creditor to discriminate against an applicant with respect to any aspect of a credit transaction "on the basis of ... marital status or age..." 15 U.S.C. § 1691(a)(1). The credit applicant may prove discrimination in violation of the ECOA by relying on any one of three different approaches used in the employment discrimination context: (1) direct evidence of discrimination; (2) disparate impact analysis; and (3) disparate treatment analysis. *AB & S Auto Service, Inc. v. South Shore Bank of Chicago*, 962 F.Supp. 1056, 1060 (N.D.Ill. 1997).

■ If there is direct evidence of discrimination shown by statements evidencing discriminatory intent, a violation may be established. *Moore v. U.S. Dept. of Agriculture*, 55 F.3d 991, 995 (5th Cir. 1995). For age related statements to show discriminatory intent, there must be a sufficient nexus between the remarks in question and the adverse action taken. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir.1992); *Collier v. Service America Corp.*, 934 F.Supp. 168, 171 (D.Md.1996). Moreover, to constitute direct proof of discriminatory intent, the statements in question must be more than stray or isolated remarks. *See O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 549 (4th Cir.1995), *rev'd. on other grounds*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996).

■ The disparate treatment approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) may also be employed by a plaintiff seeking relief under the ECOA. *See Gross v. Small Bus. Admin.*, 669 F.Supp. 50, 52 (N.D.N.Y.1987), *aff'd* 867 F.2d 1423 (2d Cir.1988). As applied in an ECOA case, the *McDonnell Douglas* formulation requires that the plaintiff make out a *prima facie* case of discrimination by offering evidence indicating: (1) that the plaintiff belongs to a class protected by the statute; (2) that he applied for credit for which he was qualified; and (3) that he was rejected despite his qualifications. *Moore v. U.S. Dept. of Agriculture*, 857 F.Supp. 507, 513 (W.D.La.1994), *vacated on other grounds*, 55 F.3d 991 (5th Cir.1995). Once the plaintiff has made out a *prima facie* case, the defendant is required to articulate legitimate, nondiscriminatory reasons for the adverse action taken. *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. 1817. If the defendant is able to articulate legitimate, nondiscriminatory reasons for the action taken, the burden then shifts back to the plaintiff to prove that the explanation offered was in fact a pretext for discrimination. *Id.*

The ECOA also provides for direct civil liability and supports a cause of action independent of any claims of discrimination. *Lewis v. Glickman*, 104 F.Supp.2d 1311, 1321 (D.Kan.2000). Pursuant to § 1691e(a), "Any creditor who fails to comply with any requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant..." Under § 1691a(g), "Any reference to any requirement imposed under this subchapter or any provision thereof includes reference to the regulations of the Board under this subchapter or the provision thereof in question." An aggrieved applicant may seek equitable and declaratory relief under § 1691e(c), as well as attorneys' fees and costs under § 1691e(d).

12 C.F.R. § 202.9(c)(2) provides as follows:

Notice of incompleteness. If additional information is needed from an applicant, the creditor shall send a written notice to the applicant specifying the information needed, designating a reasonable period of time for the applicant to provide the information, and informing the applicant that failure to provide the information requested will result in no further consideration being given to the application. The creditor shall have no further obligation under this section if the applicant fails to respond within the designated time period.

Pursuant to 12 C.F.R. § 202.14(c), a creditor's failure to comply with § 202.9 "is not a violation if it results from an inadvertent error." An "inadvertent error" is a "mechanical, electronic, or clerical error that a creditor demonstrates was not intentional and occurred notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." § 202.2(s).

## III

### Discussion

Although the parties have now engaged in discovery, the posture of this case is not essentially different from that existing when the Court denied defendants' earlier motion for summary judgment. When all the facts of record are now viewed in the light most favorable to the plaintiff, the Court concludes that, except as to plaintiff's claim of discrimination on the basis of his marital status, the issues raised by defendant's motion for summary judgment cannot be decided as a matter of law in favor of defendant Glickman. Similarly, when all the facts of record are now viewed in a light most favorable to the defendant, the Court concludes that the issues raised by plaintiff's motion for partial summary judgment cannot be decided as a matter of law in favor of plaintiff Faulkner.

Neither plaintiff nor defendant has spent much time in their memoranda discussing plaintiff's claim of discrimination on the basis of his marital status. Plaintiff has cited no case which would support such a claim on the facts present in this record. Plaintiff argues that a fact finder might legitimately infer that Spray's real motivation for demanding a lien on the 26.5 parcel was to complicate the Faulkners' plans for division of marital property and discourage the Faulkners from applying for credit assistance from the FSA. The Court would disagree.

■ There is neither direct evidence in the record of any discriminatory animus on the part of Spray based on the Faulkners' marital status nor is there evidence that Spray's insistence on securing a lien on the 26.5 acre parcel was a pretext for Spray's desire to deny ECOA benefits to Faulkner because of his marital status. Accordingly, plaintiff's claim that defendant discriminated against him with respect to credit transactions on the basis of his marital status must fail.

The events at issue here occurred over a period of many months in 1995, 1996 and 1997. During that time, there were numerous occasions when there was interaction between Faulkner and representatives of the FSA. On occasion, Faulkner, who was then in financial distress and confronted with marital problems, appears not to have acted promptly and reasonably. At other times, Spray did not strictly comply with ECOA or FSA implementing regulations. The regulations in question are numerous, detailed, and not always consistent. It is apparent that there was a lack of communication between the parties, and there is evidence that both Spray and Faulkner may have been responsible for Faulkner's inability to obtain credit relief from the FSA.

In view of the length of and the complexities of the ongoing relationship between plaintiff and representatives of the FSA, this Court concludes that, except as to plaintiff's marital status claim, this is not a case in which no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law. *Podberesky v. Kirwan*, 38 F.3d 147, 156 (4th Cir.1994); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). Rather, on this record, inquiry into the facts is indeed desirable in order to clarify the application of the many regulations and other legal principles involved.

### (a)

### Count 1

In seeking summary judgment as to Count 1 of the amended complaint, defendant argues that credible direct evidence of age discrimination does not exist in this case and that plaintiff cannot on this record satisfy the *McDonnell Douglas* scheme of proof. This Court must disagree.

In his affidavit, Davis stated that in the fall of 1996 he had a conversation with Spray in Spray's office. At the time, Spray indicated that Faulkner was "getting too old to farm and maybe he ought to be thinking about securing a different line of work." In his affidavit, Faulkner recounted a conversation he had with Voss in January of 1997. Voss asked Faulkner how old he was. When Faulkner told Voss that he was 56, Voss responded, "Well, Jim, the age you are getting, you're too old to fool with cows." Later, in a conversation which Faulkner had with Davis, Faulkner told Davis that he had talked with Voss who told Faulkner that he was too old to farm and should be thinking

about doing something else. Davis considered this odd in that both the County Supervisor and the State Director would be saying the same thing during this period of time. According to Davis, a "light bulb" went off in his head when, during his conversation with Faulkner, he remembered that Spray had earlier said the same thing. According to Faulkner, Davis told him at the time that it was no wonder Spray would not give Faulkner a loan because "he thinks you're too old to farm."

■ Viewing this and other evidence in a light favorable to the plaintiff, this Court concludes that plaintiff should be permitted to present to the jury his claim that there existed direct evidence of discrimination on the part of representatives of the FSA. It will be for the jury to determine whether the statements in question were more than stray or isolated remarks and whether a sufficient nexus existed between the remarks in question and the adverse actions taken by Spray and Voss.

Plaintiff will also be permitted to proceed at trial under the *McDonnell Douglas* scheme of proof. On the record here, the Court is satisfied that plaintiff has made out a *prima facie* case of discrimination. Although defendant has articulated legitimate, nondiscriminatory reasons for the adverse actions taken, a dispute of material fact exists as to whether the reasons given by representatives of the FSA for acting as they did were pretextual.

For all these reasons, defendant's motion for summary judgment as to Count 1 of the amended complaint will be denied.[5]

---

5. The memorandum filed by defendant in support of his motion for summary judgment did not discuss Count 2 of the amended complaint. In any event, defendant is not entitled to the entry of summary judgment in his favor

as to Count 2. As discussed hereinafter, there are disputed questions of material fact which make it inappropriate for the Court to enter summary judgment under Count 2 in favor of either party.

## (b)

### *Count 2*

In Count 2 of his amended complaint, plaintiff Faulkner asserts that defendant violated § 1691(d)(1) of the ECOA by failing to notify plaintiff within 30 days after his application was completed of the adverse action taken by defendant against plaintiff's application for a $30,000 farm operating loan. Specifically, plaintiff asserts that his application was completed on December 21, 1995 and that defendant did not provide written notice of its withdrawal of plaintiff's application until February 27, 1996.

By way of response, defendant contends that it was not required to notify plaintiff of its adverse action within 30 days because plaintiff's application was never completed. In particular, defendant claims that applicable regulations granted it latitude to establish its own application process and decide the type and amount of information it would require from credit applicants. As a result, defendant maintains that it was authorized to withdraw plaintiff's application since he did not submit to defendant the deed to his 26.5 acre farm as requested.

Pursuant to ECOA regulations, "[a] completed application means an application in connection with which a creditor has received all the information that the creditor regularly obtains and considers in evaluating applications for the amount and type of credit requested..." 12 C.F.R. § 202.2(f). The creditor has "latitude under the Regulation to establish its own application process and to decide the type and amount of information it will require from applicants." Regulation B, 12 C.F.R. Part 202, Supplement I to Part 202, § 202.2(f)(1).[6] "Once a creditor has obtained all the information it normally con-

siders in making a credit decision, the application is complete..." Regulation B, 12 C.F.R. Part 202, Supplement I to Part 202, § 202.9(a)(1). It is only when the application "is complete" that the creditor is required to notify the applicant of the credit decision within 30 days. *Id.*

According to Spray's letter of December 14, 1995, plaintiff's application "for assistance" was incomplete because certain information was lacking, including "a legal description" of plaintiff's 26.5 acre farm. Although some of the missing information had been supplied by December 21, 1995, defendant had not, as requested, received the deed to the 26.5 acre farm.[7] Over the course of the next several months, the parties, as indicated by Spray's letter of February 27, 1996, had discussions concerning defendant's need to "take a lien on all assets as part of [plaintiff's] application for deferral of [his] loans or to make an additional loan." This issue was never resolved. In Spray's February 27, 1996 letter, plaintiff was notified that his application was being withdrawn because of his "failure to provide a copy of the deed" to the 26.5 acre farm which he had purchased after the last loan had been made to him.

As plaintiff has pointed out, he was not a delinquent borrower when Spray sent his letter of December 14, 1995. According to plaintiff, the FSA was therefore not entitled to demand that it be granted a lien on all of Faulkner's property pursuant to 7 C.F.R. § 1951.910(b)(1). But Spray's letter of December 14, 1995 made no such claim. Rather, the legal description of the farm which Faulkner had recently purchased was requested by Spray for the "processing" of Faulkner's application. Plaintiff has not in this record presented evidence indicating that the document in question was not something which defen-

---

6. This Supplement contains "Official Staff Interpretations" of § 202.

7. It is not disputed that the requested deed was never provided by Faulkner.

dant "regularly obtains and considers in evaluating applications for the amount and type of credit requested..." 12 C.F.R. § 202.2(f); *see also Riggs Nat'l Bank of Washington, D.C. v. Webster,* 832 F.Supp. 147, 150 (D.Md.1993). Moreover, plaintiff has not submitted evidence demonstrating that it was not standard practice for defendant to request information of this sort in connection with a financially distressed borrower's application for a new farm operating loan. *See e.g., High v. McLean Financial Corp.,* 659 F.Supp. 1561, 1564 (D.D.C., 1987) (explaining that "[ECOA] regulations make clear that an application is considered 'complete' not when the applicant completes it—as plaintiff would have it—but when the creditor has obtained verifying information and whatever types of reports or information it ordinarily requires to evaluate a loan.") (footnote omitted).

■ It can hardly be doubted that Faulkner was financially distressed in December of 1995. He was no longer making payments by way of milk assignments, and Faulkner had refused to defer payments on his loans. Whether or not defendant was in that month entitled under applicable regulations to demand a lien on all of Faulkner's property, no such formal written demand was made before January 31, 1996 when Faulkner became a delinquent borrower. On this record, it cannot be determined as a matter of law that it was not standard practice for the FSA to request information of the sort sought here before taking final action on an application submitted by a financially distressed borrower like Faulkner.

Viewing the record here in the light most favorable to defendant as the party opposing plaintiff's motion for partial summary judgment, it cannot be determined as a matter of law when, if ever, defendant was in "receipt of a completed application" as set forth in § 1691(d). As a conse-

quence, a dispute of material fact exists concerning whether or not defendant's February 27, 1996 letter constituted written notification of adverse action within 30 days after receipt of a completed application pursuant to the requirements of § 1691(d). Accordingly, plaintiff is not entitled to partial summary judgment on the ground·that defendant violated § 1691(d).

Plaintiff further argues that he is entitled to partial summary judgment under Count 2 of his amended complaint because defendant failed to provide him with timely notice of an incomplete application as required by 12 C.F.R. § 202.9(c)(2). Under this Regulation, a written notice that an application is incomplete must be sent within 30 days and must list information necessary to complete the application and establish a reasonable time frame for receipt of the information.

■ Plaintiff asserts that the 38 day delay between November 6, 1995 and December 14, 1995 constitutes noncompliance by the FSA with 12 C.F.R. § 202.9(c)(2). However, an issue of causation arises. The question which cannot be decided at this time as a matter of law is whether Faulkner was harmed in any way by such noncompliance. Faulkner was able to respond to Spray's letter of December 14, 1995 by his letter of December 21, 1995, but he did not in that letter comply with Spray's request that he provide a legal description of the 26.5 acre parcel. There has been no showing by Faulkner that his response to Spray's letter would have been any different if there had been full compliance with § 202.9(c)(2).

Defendant contends that his noncompliance with § 202.9(c)(2) was not in any event an actionable violation because it was the result of an "inadvertent error" under § 202.14(c). Pursuant to 12 C.F.R. § 202.2(s), an inadvertent error is a "mechanical, electronic, or clerical error that a

creditor demonstrates was not intentional and occurred notwithstanding the maintenance of procedures reasonably adapted to avoid such errors." According to Spray, the responsibility for sending out notices required by the regulations was that of Roxanne Hamilton ("Hamilton"), a program technician working for Spray. Spray states that at the time in question there was a reorganization of his office, that Hamilton was not familiar with her duties and that she did not know that the letters had to be sent out at particular times.

■ Counsel for plaintiff argues that Spray's explanation for failing to timely process Faulkner's application was "self-serving." However, plaintiff's motion has been filed under Rule 56 which does not permit a court to assess the credibility of a party's deposition testimony in deciding whether to grant summary judgment in favor of a movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It will be for the jury to determine whether Spray's testimony is credible. The explanation given by Spray in these pretrial proceedings amounts to more than a "minimal showing" that defendant's failure to comply with § 202.9(c)(2) was inadvertent. *See Binakonsky v. Ford Motor Co.*, 929 F.Supp. 915, 919 (D.Md.1996), *aff'd in part*, 133 F.3d 281 (4th Cir.1998).

On the record here, this Court concludes that there is a dispute of material fact as to whether or not defendant's actions may be excused as inadvertent errors pursuant to the "safe harbor" provisions of § 202.2(s). Defendant has produced evidence indicating that Hamilton's error was not intentional. Moreover, on the record here, this Court cannot determine as a matter of law whether, as a result of events occurring after December 14, 1995, it was even necessary for defendant to correct any inadvertent error as soon as possible or whether, if it was necessary, such correction occurred as soon as possible. Before there can be a final determination in this case of defendant's right as a matter of law to rely on the safe harbor provisions of § 202.2(s), there should be a further inquiry into the facts in order to clarify the application of the law established by the various regulations at issue. *See Podberesky*, 38 F.3d at 156.

For all these reasons, plaintiff's motion for partial summary judgment will be denied.

## IV

### *Conclusion*

For all the reasons stated, this Court has concluded that defendant is entitled to summary judgment as to plaintiff's claim of marital status discrimination alleged in Count 1 of the amended complaint. Defendant is not entitled to summary judgment on plaintiff's claim of age discrimination alleged in Count 1. Since there are disputes of material fact as to the issues presented in Count 2 of the amended complaint, plaintiff's motion for partial summary judgment must be denied.

Accordingly, it is this _____ day of November, 2001 by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion for summary judgment is hereby granted in part and denied in part; and

2. That plaintiff's motion for partial summary judgment is hereby denied.