Aaron L. OSBORNE and Bonita R. Osborne, husband and wife, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

BANK OF AMERICA, NATIONAL ASSOCIATION, Defendant.

No. 3:02–0364.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 23, 2002.

Clinton W. Watkins, Brentwood, TN, Michael E. Terry, Nashville, TN, Wyman O. Gilmore, Jr., Grove Hill, AL, Richard T. Dorman, Robert T. Cunningham, Jr., John T. Crowder, Jr., David G. Wirtes, Jr., Cunningham, Bounds, Yance, Crowder & Brown, LLC, Mobile, AL, for Plaintiffs.

William L. Harbison, John Scott Hickman, Sherrard & Roe, Nashville, TN, Andrew L. Sandler, Anand S. Raman, Skadden, Arps, Slate, Meagher & Flom, LLP, Washington, DC, for Defendant.

### MEMORANDUM and ORDER

TRAUGER, District Judge.

This case is before the court on defendant's Motion to Dismiss (Docket No. 32), to which the plaintiffs have responded (Docket No. 38), and defendant has replied (Docket No. 40).

### Background and Procedural History

In January 2000, plaintiffs sought automobile financing from Crest Cadillac, a Nashville, Tennessee dealership, to facilitate their purchase of one of the dealer-ship's automobiles. (Docket No. 1, Comp. at ¶ 29) Crest arranged for plaintiffs to obtain financing in the amount of $25,915.72 from defendant Bank of America, National Association (Bank of America). (Id. at ¶¶ 30, 31) To secure the cred-it, plaintiffs signed a retail installment contract that charged plaintiffs an annual interest rate of 10.69% (the Contract APR) for a period of six years and obli-gated the plaintiffs to pay $9,461.48 in finance charges. (Id. at ¶¶ 31, 32) At the time they contracted for the financing, plaintiffs believed that the interest rate to which they agreed was calculated on the basis of objective lending criteria alone. (Id. at ¶¶ 33, 34) Plaintiffs now believe that the contract APR included a subjec-tive Finance Charge Markup determined by Crest and authorized by Bank of America, which caused them, as African-Americans, to pay a higher finance charge than a similarly situated white customer, in violation of the Equal Credit Opportu-nity Act, 15 U.S.C. § 1619a et seq. (Id. at ¶¶ 48–51) Plaintiffs seek class-wide eq-uitable relief on behalf of themselves and all similarly situated African–Americans. In support of their claim, plaintiffs allege the following facts.

Bank of America provides credit to auto-mobile purchasers through an indirect lending program, in which dealers origi-nate consumer auto loans on Bank of America's behalf. (Id. at ¶¶ 6–8) The indi-rect lending program utilizes a retail credit pricing system that incorporates two com-ponents into the APR charged to the cus-tomer: the "Buy Rate" and the "Finance Charge Markup". (Id. at ¶ 5) The "Buy Rate" is the "minimum finance charge for a particular customer after consideration of all risk related variables pertaining to the customer's purchase." The Buy Rate is established by Bank of America based upon a customer's credit worthiness, as

reflected in the risk "tier" assigned to the customer. The "Finance Charge Markup" is "the non-risk charge added to the Buy Rate" by the dealer. The Markup is incorporated into the Contract APR without the customer's knowledge and paid by the customer to Bank of America. A portion of the Markup is then rebated back to the dealer, with the remaining portion retained by Bank of America. Plaintiffs allege that the use of these Markups results in African–American customers paying significantly higher finance charges than white customers of equal credit worthiness. (*Id.* at ¶¶ 48–50, 56)

Plaintiffs assert that Bank of America is responsible for the racially discriminatory effects of Markups under the ECOA because: (1) Bank of America is a creditor under ECOA; (2) Bank of America participates in the decision to extend or renew credit; (3) Bank of America knew that its policy of encouraging subjective Markups through the use of dealer incentives caused African–Americans to pay higher finance charges than white customers of comparable credit worthiness. (*Id.* at ¶¶ 38–41) Alternatively, plaintiffs assert that Bank of America is legally liable under the ECOA because dealers who originate loans on Bank of America's behalf act as Bank of America's agents and/or Bank of America has a non-delegable duty to ensure that its automobile financing policies do not have a disparate impact on African–Americans.[1] (*Id.* at ¶¶ 43–45)

Bank of America now moves to dismiss plaintiffs' Complaint for failure to state a claim, arguing that: (1) Bank of America is only an assignee of the loans generated by dealers and, therefore, not liable to the plaintiffs under the ECOA; (2) Bank of America cannot be held liable for dealers'

lending activities under plaintiff's alternative theories of agency and the non-delegable duty doctrine; (3) disparate impact claims are not cognizable under the ECOA; (4) assuming disparate impact claims are cognizable, such claims would be limited to creditworthiness determinations; and (5) plaintiffs fail to allege any causal relationship between a specific practice of Bank of America and the alleged disparate impact. (Docket No. 32)

### *Standard of Review*

In deciding a motion to dismiss for failure to state a claim under either Rule 12(b)(6) or Rule 12(c), the court will accept the facts as the plaintiff has pleaded them as true. *See Performance Contracting, Inc. v. Seaboard Surety Co.*, 163 F.3d 366, 369 (6th Cir.1998); *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir.1997). The court will not dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Performance Contracting*, 163 F.3d at 369. This narrow inquiry is based on whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Id.*

---

1. In their complaint, plaintiffs additionally asserted that Bank of America could be held liable under a holder-in-due course theory. Plaintiffs now state that they will not rely on this theory of liability. Thus, the court will deem this claim abandoned.

### Discussion

The ECOA prohibits creditors from discriminating against any applicant, with respect to any aspect of a credit transaction, on the basis of race, color, religion, national origin, sex or marital status, or age. 15 U.S.C. § 1961. The statute defines the term "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1961(a)(e). Under regulations issued by the Federal Reserve Board, the agency charged with administering the ECOA:

> The term [creditor] includes a creditor's assignee, transferee, or subrogee who so participates [in the decision to extend, renew, or continue credit].... A person is not a creditor regarding any violation of the act or this regulation committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction.

12 C.F.R. § 202.2(1).

### A. Bank of America's Liability as a Creditor

■ In this case, Bank of America argues that it is not a creditor under § 202.2(1), which it deems the "Multiple Creditor Rule," because it obtains automobile loans through an assignment from the dealer and has no knowledge of any discriminatory actions allegedly taken by the dealers who originate those loans. Plaintiffs contend that Bank of America is an assignee in name only. As evidence, plaintiffs note that Bank of America determines a customer's creditworthiness and sets the Buy Rate for the automobile loans, as well as the maximum Markup that a dealer may apply to a customer's loan. Plaintiffs further note that dealers process the loans in accordance with Bank of America's policies and procedures; that Bank of America, rather than the dealer, bears the risk of default from the moment the loan is approved; and that Bank of America compensates dealers for originating loans by rebating to them a portion of the markup. Plaintiffs assert that, under these circumstances, Bank of America may be deemed the originating creditor for purposes of the ECOA The court agrees. *Cf. Ford Motor Credit Co. v. Cenance*, 452 U.S. 155, 158, 101 S.Ct. 2239, 2241, 68 L.Ed.2d 744 (1981) ("The sales were contingent upon FMCC's approval of the credit worthiness of the buyer. The acceptance of the contract and the assignment became operational simultaneously, and the assignment divested the dealer of any risk in the transaction. In short, we agree with the Court of Appeals that it would be elevating form over substance to conclude that FMCC is not a creditor within the meaning of the [Truth in Lending] Act.")

Additionally, plaintiffs have adequately alleged that Bank of America had reasonable notice of the racially discriminatory effects of dealers' subjective Markups, thereby rendering the Multiple Creditor Rule inapplicable. *See United States v. Cello–Foil Products, Inc.*, 100 F.3d 1227, 1233 (6th Cir.1996) ("[K]nowledge, like intent, is a factual issue which may be proved by circumstantial evidence.") (citations omitted). Plaintiffs may or may not be able to substantiate this allegation after discovery. At this stage of the litigation, however, they need only allege facts which, if proven, would entitle them to relief. *See Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. 1683. This they have done.

### B. Agency Liability

■ Bank of America next argues that plaintiffs cannot seek recovery from Bank

of America for the discriminatory acts of Crest and other automobile dealers because they failed to allege facts necessary to establish agency. Specifically, Bank of America takes issue with plaintiffs' failure to allege that Bank of America and the dealers intended to create an agency relationship or that Bank of America exercised control over the dealers. Bank of America asserts that, at best, plaintiffs have merely alleged facts which demonstrate how "the Bank competed with other third parties for the dealer's business, such as by providing convenient financing forms and responding to the dealer's inquiries as to whether the Bank might purchase a particular loan." (Docket No. 33 at p. 8)

Again, Bank of America attempts to impose a heightened pleading standard upon the plaintiffs and persuade the court to draw inferences in its favor. To survive a motion to dismiss, however, plaintiffs need only allege sufficient facts from which a rational trier of fact could infer an agency relationship. Here, plaintiffs allege that the dealers originated automobile loans on behalf of Bank of America and were subject to Bank of America's policies and procedures in doing so. Plaintiffs need allege no more. *See White v. Revco Disc. Drug Ctrs., Inc.,* 33 S.W.3d 713, 724 (Tenn.2000) (summarizing the general principles of the state's law of agency);[2] 3 Am Jur.2d Agency § 352 (2002) ("[W]hen the facts pertaining to the existence of an agency are conflicting, or conflicting inferences may be drawn from the evidence, the question is one of fact for the jury, or for the court as the trier of fact if the case is tried without a jury. The weight of such evidence to show agency is a question for the trier of fact.").

### C. Bank of America's Liability Under the Non–Delegable Duty Doctrine

■ Bank of America argues that, contrary to this court's opinion in *Coleman v. GMAC,* 196 F.R.D. 315, 325 n. 1 (M.D.Tenn.2000), it cannot be held liable under the non-delegable duty doctrine for any discriminatory acts undertaken by dealers in the course of originating loans. The court finds Bank of America's arguments unpersuasive and declines to reverse itself on this issue at the present time. Should the Supreme Court issue a decision favorable to Bank of America in *Holley v. Crank,* 258 F.3d 1127 (9th Cir. 2001), *cert. granted,* —— U.S. ——, 122 S.Ct. 1959, 152 L.Ed.2d 1020 (2002), Bank of America may again challenge its liability to plaintiffs under the non-delegable duty doctrine. For now plaintiffs may proceed under this theory.

### D. Viability of a Disparate Impact Claim Under the ECOA

■ Bank of America argues that the plaintiffs fail to state a claim under ECOA

---

**2.** As the Tennessee Supreme Court stated in *White:*

In its broadest sense, the concept of agency "includes every relation in which one person acts for or represents another." *Kerney v. Aetna Cas. & Sur. Co.,* 648 S.W.2d 247, 253 (Tenn.Ct.App.1982). An agency relationship does not require an explicit agreement, contract, or understanding between the parties, *Warren v. Estate of Kirk,* 954 S.W.2d 722, 725 (Tenn.1997), and when "the facts establish the existence of an agency relationship, it will be found to exist whether the parties intended to create

one or not." *Harben v. Hutton,* 739 S.W.2d 602, 606 (Tenn.Ct.App.1987); *see also Smith v. Tennessee Coach Co.,* 183 Tenn. 676, 680–81, 194 S.W.2d 867, 869 (1946). Whether an agency exists "is a question of fact under the circumstances of the particular case; and whether an agency has been created is to be determined by the relation of the parties as they in fact exist under their agreement or acts." *McCay v. Mitchell,* 62 Tenn.App. 424, 434, 463 S.W.2d 710, 715 (1970).

33 S.W.3d at 724.

810

because they do not allege intentional discrimination by the Bank, but instead complain only of the disparate impact of dealer Markups. Bank of America maintains that such a claim is inconsistent with the statutory text and cannot be created by the Federal Reserve Board's implementing regulations. In support of this position, Bank of America cites the Supreme Court's decision in *Alexander v. Sandoval,* 532 U.S. 275, 293, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), which held that there is no private right of action to enforce disparate-impact regulations promulgated under Title VI of Civil Rights Act of 1964. For the reasons set forth below, the court rejects Bank of America's reading of *Sandoval.*

In *Sandoval,* plaintiffs challenged Alabama's policy of conducting driver's license examinations in English only, arguing that "it had the effect of subjecting non-English speakers to discrimination based upon their national origin." 532 U.S. at 279, 121 S.Ct. 1511. Plaintiffs brought their claim under 28 C.F.R. § 42.104(b)(2), a regulation prohibiting federal funding recipients from "utiliz[ing] criteria or methods which have the effect of subjecting individuals to discrimination because of their race, color, or national origin ...." *Id.* at 278–79, 121 S.Ct. 1511. This regulation was promulgated by the United States Department of Justice pursuant to its authority under § 602 of Title VI of the Civil Rights Act of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.,* to "effectuate the provisions" of § 601 of that Act, which provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity covered by Title VI." *Id.*

The Supreme Court granted *certiorari* to consider "the question whether private individuals may sue to enforce disparate-impact regulations promulgated under Title VI of the Civil Rights Act of 1964." *Id.* at 278, 121 S.Ct. 1511. At the outset of its analysis, the Court stated that three aspects of Title VI must be taken as given based on prior decisions and congressional amendments to Title VI:(1) private individuals have an implied right of action under § 601 to sue for injunctive relief and damages; (2) § 601 prohibits only intentional discrimination; and (3) the Court could assume that § 602's regulations "may validly proscribe activities that have a disparate impact on racial groups, even though such activities are permissible under § 601." *Id.* at 279–82, 121 S.Ct. 1511.

Proceeding to the issue of whether a private cause of action exists to enforce disparate impact regulations promulgated under § 602 of Title VI, the Court held that the regulations could not authorize a private right to enforce regulatory prohibitions that proscribed conduct not proscribed by the statute itself. *Id.* at 293, 121 S.Ct. 1511. In reaching this conclusion, the Court stated that its analysis must be guided by the principal that "private rights of action to enforce federal law must be created by Congress." *Id.* at 286, 121 S.Ct. 1511 (citation omitted). Thus, the Court's task was "to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.*

Based upon the language and structure of Title VI, the Court first determined that Section 601 could not convey a private right of action for the enforcement of regulations prohibiting disparate impact discrimination because § 601 only prohibits intentional discrimination. *Id.* The Court then considered whether § 602 conferred a private cause of action to enforce disparate impact regulations. *Id.* at 287–92, 121

S.Ct. 1511. The Court determined that it did not, and could not, because it contained no rights-enforcing language. *Id.* at 288–89, 121 S.Ct. 1511 Instead, § 602 limits the enforcing agency to " 'effectuat[ing]' rights already created by § 601." *Id.* at 289, 121 S.Ct. 1511. Because § 602 is "phrased as a directive to federal agencies engaged in the distribution of federal funds," the Court discerned no Congressional intent to create "a private remedy in favor of individual persons." *Id.* Finally, the Court rejected the argument that "the regulations contain rights-creating language and so must be privately enforceable." *Id.* at 291, 121 S.Ct. 1511. In summarizing its holding, the Court stated, "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* (citing *Touche Ross & Co. v. Redington,* 442 U.S. 560, 577 n. 18, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)).

Properly construed then, *Sandoval* holds only that regulations may not create private rights of action where no such right was intended by Congress. But that is not the case with the ECOA.[3] Rather, the ECOA itself has been construed to prohibit practices with discriminatory effects, as well as practices motivated by discriminatory intent.[4] *See, e.g., Faulkner v. Glickman,* 172 F.Supp.2d 732, 737 (D.Md.2001); *AB & S Auto Service, Inc. v. South Shore Bank of Chicago,* 962 F.Supp. 1056, 1060 (N.D.Ill.1997); *Gross v. United States Small Bus. Admin.,* 669 F.Supp. 50, 52–53 (N.D.N.Y.1987); *Thomas v. First Federal Sav. Bank of Indiana,* 653 F.Supp. 1330, 1341 (N.D.Ind.1987); *Sayers v. General Motors Acceptance Corp.,* 522 F.Supp. 835, 840 (W.D.Mo.1981); *Cherry v. Amoco Oil Co.,* 490 F.Supp. 1026, (N.D.Ga.1980). *See also* Charlotte E. Thomas, DEFENDING A FREE STANDING EQUAL CREDIT OPPORTUNITY ACT CLAIM, 114 Banking Law Journal, 108, 109 (1997). Thus, it is not a given that the ECOA prohibits only intentional discrimination, as was the case in *Sandoval.* Moreover, the

---

**3.** Legislative history demonstrates that Congress intended to prohibit lending practices with racially discriminatory effects, as well as lending practices motivated by racial animus. According to contemporaneous House and Senate Reports, courts and agencies "are free to look at the effects of a creditor's practices as well as the creditor's motives or conduct in determining whether the creditor engaged in unlawful racial discrimination." S.Rep. No. 94–589, 94th Cong., 2d Sess., reprinted in 1976 U.S.C.C.A.N. 403, 406; *see also* H.R. Conf. Rep. No. 873, 94th Cong., 2d Sess., reprinted in 1976 U.S.C.C.A.N. 426.

**4.** Indeed, one may conclude from the face of the statute that Congress intended the ECOA to extend beyond intentional discrimination, as it included a "good faith defense" provision in the section authorizing a private right of action. *See* 15 U.S.C. § 1915e(e). Had Congress intended for the ECOA to prohibit only intentional discrimination, such a provision would have been unnecessary because good faith has always been a defense to intentional discrimination. *Cf. Smith v. Chrysler Corp.,* 155 F.3d 799, 806–07 (6th Cir.1998) (adopting "honest belief rule" for Title VII employment discrimination cases) ("If the employer honestly, albeit mistakenly, believes in the non-discriminatory reason it relied upon in making its employment decision, then the employer arguably lacks the necessary discriminatory intent."). Because the court must construe the statute as a whole and give effect to all of its provisions, the court can only conclude that the "good faith defense" provision was incorporated into the ECOA because the statute reaches beyond intentional discrimination to include conduct and practices that have unintentional discriminatory effects. *Cf. Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 163, 102 S.Ct. 3014, 3027, 73 L.Ed.2d 664 (1982) ("We decline to construe the Act so as to render these provisions nugatory, 'thereby offending the well-settled rule that all parts of a statute, if possible, are to be given effect.' ") (citing *American Textile Mfrs. Institute, Inc. v. Donovan,* 452 U.S. 490, 513, 101 S.Ct. 2478, 2492, 69 L.Ed.2d 185 (1981)).

ECOA grants the Federal Reserve Board broad authority to flesh out the terms of the statute. *See* 15 U.S.C. § 1691a(g) ("Any reference to any requirement imposed under this subchapter or any provision thereof includes reference to the regulations of the Board under this subchapter or the provision thereof in question."). Finally, the ECOA explicitly provides a private right of action to enforce its provisions. *See* 15 U.S.C. § 1691e.

Given these significant differences, the court rejects the argument that *Sandoval* bars the plaintiffs from proceeding under the ECOA on a disparate impact claim. As the Seventh Circuit recently stated in rejecting a similar challenge to a different statute, "Sandoval is distinguishable for ... it addressed an implied right of action founded on a regulation promulgated under Title VI. Here we have an express private right of action, where Congress' intent is clear from the language and structure of the statute itself as well as from the legislative history." *Boim v. Quranic Literacy Inst. and Holy Land Foundation*, 291 F.3d 1000, 1020 (7th Cir. 2002).

Likewise, the court rejects the argument that ECOA disparate impact claims encompass only determinations of creditworthiness. The court has previously decided this issue, *see Coleman*, 196 F.R.D. at 326, and Bank of America has offered no persuasive reasons for the court to revisit its prior decision.

### E. Failure to State a Claim

██ Bank of America also contends that dismissal is appropriate because the plaintiffs have not identified a specific Bank policy that caused a disparate impact on a protected group. The court disagrees. Plaintiffs allege that Bank of America's policy of authorizing, indeed encouraging, dealer Markups results in significantly higher finance costs being imposed upon African–American customers than upon similarly situated white customers of equal creditworthiness. It is not unreasonable to infer that African–American and white customers would incur roughly equal finance costs if Bank of America relied upon objective lending criteria alone. Thus, the plaintiffs have adequately pled causation. *See Coleman*, 196 F.R.D. at 325. Whether they can prove causation remains to be seen.

### *Conclusion*

For the reasons stated herein, Defendant's Motion for Summary Judgment (Docket No. 32) is **GRANTED IN PART and DENIED IN PART**. Because plaintiffs have stated that they will not seek to hold Bank of America liable under the FTC holder-in-due-court rule, that claim is **DISMISSED**. Plaintiffs will be allowed to proceed with disparate impact claims against Bank of America based upon the alternative theories of creditor liability, agency liability, and liability under the non-delegable duty doctrine.

It is so **ORDERED**.